LEE LITIGATION
148 WEST 24TH STREET
NEW YORK
TEL: 212
FAX: 212

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/6/2023

WRITER'S DIRECT:  (212) 465-1188
cklee@leelitigation.com

> The issues discussed below will be addressed at the **November 8, 2023** conference. Counsel for Defendant is directed to file a letter stating their position on each of the three issues by **November 7, 2023**.
>
> SO ORDERED:
>
> *[signature]*
> HON. KATHARINE H. PARKER
> UNITED STATES MAGISTRATE JUDGE   11/6/2023

**Via ECF**:
The Honorable Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Ni et al. v. HSBC Bank USA, N.A.*
     Case No. 1:23-cv-00309-RA-KHP

Dear Judge Parker:

We are counsel to Plaintiff. We write to inform the Court of a discovery dispute and request an informal conference under Local Civil Rule 37.2 and Your Honor's Individual Rules. Plaintiff and Defendant have met and conferred regarding their discovery disputes.

At the parties July 24, 2023, conference, Plaintiff moved the Court to compel production of (i) e-discovery and (ii) contact information of putative class members. During this conference, the Court determined that it would take up these two issues after Plaintiff received a sampling of time records:

> **THE COURT**: *And then once you get those time records, then we can take up whether you're going to get any list of people.*
>
> **MR. LEE**: *That's great, Your Honor. Along the same lines, I actually had other E-discovery stuff that I had raised with the Court, but if the Court is amenable to, like, a phased discovery analysis so that I can confirm that, in their production, people are, in fact, having a flat one-hour break time for all the other branches…*
>
> **THE COURT**: *Yeah, I'm not denying anything. I'm not denying a list of people. Just let's take a look at this…*

See **Exhibit A**, July 24, 2023, Hearing Transcript at 46:8-22.

In accordance with the phased discovery analysis, Plaintiff re-moves the Court for production of contact information and e-discovery.

### I. REVIEW OF THE SAMPLED DOCUMENTS

The records reveal two violations on their face. First, Defendant failed to compensate Covered Employees for short breaks of twenty (20) minutes or less, as required under the FLSA. Second, Defendant prohibited Covered Employees from self-reporting overtime work they performed, with the result that such work went uncompensated.

As to the first violation (the 20-minute violation), Plaintiff's temporally limited sampling revealed that approximately 30% of sampled employees experienced this violation. *See* Plaintiff's Plf. Mem. in Sup. of Cond. Collective Cert. ("216(b) Mem."), **Exhibit 8**. Additionally, many of the violations are a clear rest break pursuant to 28 C.F.R. § 785.15, with no argument that it served

as a meal break. For example, the below record shows an employee taking a both a thirty (30) minute meal break, and a five (5) minute rest break.

| 43464350 | 3/5/2020 | Transfer | 3/5/2020 | 8:30  | 3/5/2020 | 11:30 | 3.00 |
|----------|----------|----------|----------|-------|----------|-------|------|
| 43464350 | 3/5/2020 | Out      | 3/5/2020 | 11:30 | 3/5/2020 | 11:30 | 0.00 |
| 43464350 | 3/5/2020 | Transfer | 3/5/2020 | 11:35 | 3/5/2020 | 12:45 | 1.17 |
| 43464350 | 3/5/2020 | Out      | 3/5/2020 | 12:45 | 3/5/2020 | 12:45 | 0.00 |
| 43464350 | 3/5/2020 | In       | 3/5/2020 | 13:15 | 3/5/2020 | 18:15 | 5.00 |
| 43464350 | 3/5/2020 | Out      | 3/5/2020 | 18:15 | 3/5/2020 | 18:15 | 0.00 |

Here, the putative class member took both a meal break and a short rest break of five minutes. The third circuit has found that "[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation…[E]mployers and employees are best served by the bright line time test currently provided in Section 785.18." *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017); U.S. DOL Operations Handbook, Ch. 31a01(a) (Aug. 10, 2016) ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked.").

As to the second violation, Plaintiff Ni alleges that Defendant used an illegal policy of coercing Covered Employees into performing overtime work while using the threat of disciplinary action to inhibit them from self-reporting their overtime hours. The evidence for this is found in the wage records of Plaintiff Ni and former plaintiff Hayranian, which show many consecutive biweekly paystubs for exactly 80 hours. *See* 216(b) Mem. at 10, Exhibits 38, 39. Given the unlikelihood that they actually worked with such robotic consistency, this consistency is evidence of Defendant's unlawful policy—which caused employees to repeatedly underreport their hours at exactly 40 a week, in order to obtain as much just compensation as possible without incurring retaliation. On September 12, 2023, Defendant provided Plaintiff with a class sampling of 100 employee wage records, and Plaintiff's analysis found that 37% of these records contained at least one stretch of three or more biweekly wage statements, each for exactly 80 hours (to the minute!). *See* 216(b) Mem., Exhibit 40. Many contain multiple stretches that are considerably longer than 6 weeks. Employee 44083874, for example, had stretches of 7 and 12 consecutive 80-hour paystubs (14 weeks and 24 weeks respectively). Employee 44111919 has a stretch of *18* consecutive 80-hour paystubs (36 weeks). On October 13, 2023, Defendant produced a second sampling of 71 employee records. After reviewing the second sampling, this second samplings' results mirrored the first. 20-minute break violations could be found among 60% of Maryland employees, 63% of New Jersey employees, 100% of Pennsylvania employees, and 50% of Washington employees. The new records also showed long stretches of consecutive biweekly paystubs for exactly 80 hours, with one Maryland employee having 11 such paystubs (22 weeks). *See* 216(b) Mem., Exhibit 89.

The robotic consistency revealed by the wage statement is also shown in employee time records. Attached as **Exhibit A** to this letter-motion is an example of one employee's unnatural clock-ins-and-outs that are obviously calculated to produce exact 8-hour days (and, therefore, exact 40-hour work weeks, without overtime).

In short, Plaintiff's Ni's class-wide allegations are amply supported by Defendant's production. Consequently, Plaintiff is amply justified in seeking further discovery, to investigate Defendant's actual policies and interview individuals whose records it has already examined.

## II.  E-DISCOVERY

Plaintiff is seeking e-discovery to demonstrate the same violations occurring to Plaintiff occurred to others. Namely, receiving messages and texts from co-workers and management. Plaintiff provided her personal messages regarding demonstrating work occurring after her unnatural clock-in times. Management and coworkers communicated afterhours via personal devices, such documentation, will be critical to establish that sampled employees engaged in the same off-the-clock work as Plaintiff. *See* **Exhibit 86** and **88** to Plf. Mem. Br. for Cond. Cert. Showing Texts Demonstrating Off-the-Clock Work.

Plaintiff seeks e-discovery production of emails and short-message-services (i) from all branch managers from branches from which we received a sampling, and (ii) limited to the time-period during which Plaintiff received her sampling. Plaintiff has limited her requests to the following search terms: **a**. covid, **b**. KPI, **c**. key performance indicator, **d**. quota, **e**. quarter*, **f**. lunch, **g**. break, **h**. after w/20 hour*, **i**. home, **j**. sign up or signup or sign-up, **k**. 20 minute*, **l**. lunch, **m**. unpaid, **n**. wage or salary or pay or compensation, **o**. time record, **p**. punch, **q**. OT or overtime, **r**. timesheet or time sheet, **s**. clock.

Under the Sedona Conference Protocols, upon a party's receipt of e-discovery requests, the producing party is to generate a search term report adhering to the requesting party's search terms and custodians. *See* THE SEDONA CONFERENCE, *Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process*, at 26–27 (September 2016). Rather than follow this typical practice, outlined by the Sedona Conference, Defendant has refused to provide any hit report in this matter. The requested discovery is necessary to concretely establish the violation already implicated by the above records.

## III.  CLASS CONTACT INFORMATION:

Plaintiff has also requested contact information, i.e., name address, email, mobile number of all prospective class members. This is appropriate because each of these individuals is a prospective witnesses. For this reason, "the weight of authority in this district counsels in favor of allowing such disclosures [referring to pre-certification disclosure of contact information]." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 U.S. Dist. LEXIS 58460, at *4 (S.D.N.Y. June 14, 2010). In this matter, that information is particularly needed as almost all of the branch managers from whom we seek e-discovery production are former employees. It is doubtful that Defendant will be capable of running searches on the personal devices for workers no longer employed in its employ. Instead, Plaintiff must be permitted to gather this relevant documentation directly from prospective class members.

"[T]here is an abundance of case law from the Southern District of New York, over the last nine years, which has 'routinely allow[ed] plaintiffs to discover identifying information regarding potential class members . . . .'" *Strauch v. Comput. Scis. Corp.*, No. 3:14 Civ. 956, 2015 U.S. Dist. LEXIS 516, at *10 (D. Conn. Jan. 6, 2015) (collecting cases). Courts in this district have found such contact information discoverable, both before and in the event of a denied 216(b) motion.

"[E]ven where a plaintiff's motion to certify an FLSA collective action fails to assert facts sufficient to meet the § 216(b) threshold, courts in this district have often ordered the disclosure of contact information for potential opt-in plaintiffs so that discovery into the collective allegations could continue and plaintiffs could renew their motion for certification at a later date." *Kwan v. Sahara Dreams Co. II*, 2020 U.S. Dist. LEXIS 79899, *20-21 (S.D.N.Y. 2020).

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

      We request that the above issue be taken up during the parties' November 8, 2023, conference, and we thank the Court for its consideration of the above.

Respectfully submitted,

*/s/ C.K. Lee*
C.K. Lee, Esq.

# Exhibit A – Sample Time Records of Employee ID 4509350

| | | | | | | |
|---|---|---|---|---|---|---|
| 45093950 | 1/2/2020 | 1/2/2020 | 8:45 | 1/2/2020 | 12:00 | 3.25 |
| 45093950 | 1/2/2020 | 1/2/2020 | 12:00 | 1/2/2020 | 12:00 | 0.00 |
| 45093950 | 1/2/2020 | 1/2/2020 | 12:45 | 1/2/2020 | 17:30 | 4.75 |
| 45093950 | 1/2/2020 | 1/2/2020 | 17:30 | 1/2/2020 | 17:30 | 0.00 |
| 45093950 | 1/3/2020 | 1/3/2020 | 8:45 | 1/3/2020 | 12:00 | 3.25 |
| 45093950 | 1/3/2020 | 1/3/2020 | 12:00 | 1/3/2020 | 12:00 | 0.00 |
| 45093950 | 1/3/2020 | 1/3/2020 | 12:45 | 1/3/2020 | 17:30 | 4.75 |
| 45093950 | 1/3/2020 | 1/3/2020 | 17:30 | 1/3/2020 | 17:30 | 0.00 |
| 45093950 | 1/6/2020 | 1/6/2020 | 8:45 | 1/6/2020 | 12:00 | 3.25 |
| 45093950 | 1/6/2020 | 1/6/2020 | 12:00 | 1/6/2020 | 12:00 | 0.00 |
| 45093950 | 1/6/2020 | 1/6/2020 | 12:45 | 1/6/2020 | 17:30 | 4.75 |
| 45093950 | 1/6/2020 | 1/6/2020 | 17:30 | 1/6/2020 | 17:30 | 0.00 |
| 45093950 | 1/7/2020 | 1/7/2020 | 8:45 | 1/7/2020 | 12:00 | 3.25 |
| 45093950 | 1/7/2020 | 1/7/2020 | 12:00 | 1/7/2020 | 12:00 | 0.00 |
| 45093950 | 1/7/2020 | 1/7/2020 | 12:45 | 1/7/2020 | 17:30 | 4.75 |
| 45093950 | 1/7/2020 | 1/7/2020 | 17:30 | 1/7/2020 | 17:30 | 0.00 |
| 45093950 | 1/8/2020 | 1/8/2020 | 8:45 | 1/8/2020 | 12:00 | 3.25 |
| 45093950 | 1/8/2020 | 1/8/2020 | 12:00 | 1/8/2020 | 12:00 | 0.00 |
| 45093950 | 1/8/2020 | 1/8/2020 | 12:45 | 1/8/2020 | 17:30 | 4.75 |
| 45093950 | 1/8/2020 | 1/8/2020 | 17:30 | 1/8/2020 | 17:30 | 0.00 |
| 45093950 | 1/9/2020 | 1/9/2020 | 8:45 | 1/9/2020 | 12:00 | 3.25 |
| 45093950 | 1/9/2020 | 1/9/2020 | 12:00 | 1/9/2020 | 12:00 | 0.00 |
| 45093950 | 1/9/2020 | 1/9/2020 | 12:45 | 1/9/2020 | 17:30 | 4.75 |
| 45093950 | 1/9/2020 | 1/9/2020 | 17:30 | 1/9/2020 | 17:30 | 0.00 |