**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

KELLY NI, JERRY GARCIA, and KEVONI
HEYRANIAN, on her own behalf of themselves and
on behalf of others similarly situated,

                                        Plaintiff,

                        -against-

HSBC BANK USA, N.A.,

                                        Defendant.

----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/2024
```

**23-cv-00309 (AS) (KHP)**

**OPINION & ORDER**
**ON MOTION FOR**
**CONDITIONAL CERTIFICATION**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Kelly Ni,[1] individually and on behalf of others similarly situated, brings this

action against Defendant HSBC Bank USA, N.A. ("HSBC") for alleged violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"). Plaintiff

has moved for "conditional certification" of the FLSA claims as a nationwide collective action

and for leave to disseminate notice to the putative FLSA collective, pursuant to 29 U.S.C. §

216(b). She seeks to include Personal Bankers and Tellers in the collective. In connection with

the motion, Plaintiff has proposed a form of notice to send to the putative collective and asks

the Court to compel Defendant to produce a list of all employees in the collective that includes

their names, titles, compensation rates, dates of employment, last known mailing address,

email address and telephone numbers. Plaintiff moves for an opt-in period of 90 days and asks

---

[1] Plaintiffs Garcia and Hayranian withdrew as plaintiffs after the filing of the Amended Complaint. (ECF Nos. 62, 80)

that the statute of limitations for the potential opt-in Plaintiffs be equitably tolled as of the date of the filing of the Compliant until the opt-in period to this action expires.

Defendant opposes the motion.

For the reasons set forth below, the motion (ECF No. 74) is granted in part and denied in part.

## BACKGROUND

During the relevant period, Defendant HSBC operated approximately 200 retail branches and employed approximately 490 Personal Bankers and 550 Tellers. (Chichos Decl. ¶¶ 3-4.) It is headquartered in New York and New York is its primary market. Tellers worked from Teller windows and could access HSBC systems only while at work in the branch. (*Id.* ¶ 9.) Personal Bankers worked at desks within the branches and were primarily responsible for customer service, offering various financial products to customers including loans and checking and savings accounts, and could accepts deposits. (Chichos Decl. ¶ 10.) Except for a 3 to 4 month-period during the beginning of the COVID pandemic, Personal Bankers did not have remote access to HSBC's systems. (*Id.* ¶¶ 11-14)

Plaintiff Ni worked for Defendant in New York City as a Personal Banker from on or about October 7, 2019 to March 15, 2021. (First Amended Complaint ("FAC") ¶ 34.) She worked predominantly at a Park Avenue branch, but attests she worked at the East 86th Street branch and other unspecified New York City branches on an as-needed basis. (Ni Decl. ¶¶ 1, 10.) HSBC disputes that Ni ever worked at other branches.

Ni alleges she worked five days a week and was scheduled to work either from 8:00 a.m. to 5:00 p.m. or from 9:00 a.m. to 6:00 p.m.[2]  (FAC ¶ 35; Ni Decl. ¶ 3.)  She was compensated $21.50 per hour.  (FAC ¶ 36.)  She contends that she always worked through lunch but was not paid for that work time, which she contends equates to two-and-one half hours each week of her employment.  (FAC ¶ 46; Ni Decl. ¶¶ 4, 9.)  She contends that during her lunch breaks she filled in for Tellers and attended to customers who walked into the branch.

She also alleges that she would clock out for short rest breaks, all less than 20 minutes, and was not compensated for those breaks in violation of federal and state wage laws.  (FAC ¶ 47.)  She contends the exact amount of damages due to this violation can be calculated directly from Defendant's records.  (*Id.*)  Through discovery, she has been able to identify five days during her employment when her time records show her clocked out for twenty minutes or less for which she was not compensated.  (Lee Decl. Exh. 7.)  Some of these breaks were during the middle of the workday, which Defendant contends could be a shortened lunch break.  Whether these breaks were bona fide lunches or other types of breaks for which no compensation was due is a merits issue to be decided at a later stage of the case.

Ni also alleges that during the COVID pandemic when many customers did not want to come into bank branches, she and other Personal Bankers in the putative collective were forced to work in the evenings to solicit new clients in order to meet sales expectations and fulfill so-called "Key Performance Indicators" or "KPIs."  (FAC ¶ 48.)  She contends the evening work that

---

[2] In response to the Covid-19 Pandemic, Defendant changed the hours of its branches to be open on weekdays from 9 a.m. to 5 p.m.  Cichos Decl. ¶ 22.  Additionally, from March to June 2020, Defendant closed its branches on Wednesdays.  *Id.* ¶ 23.  It is unclear when the hours returned to pre-Pandemic hours.

she was forced to engage in was off-the-clock and uncompensated, explaining that the unreasonably high expectations in the KPIs resulted in a pressure-filled culture where employees could not meet expectations unless they worked uncompensated extra hours off-the-clock.  (*Id.* and Ni Decl. ¶¶ 19-23, 25.)  She contends that from March 15, 2020 until March 15, 2021, managers instituted a policy requiring off-the-clock work but specifically told her and other Personal Bankers that no one was to work more than 40 hours per week.  (FAC ¶ 49.)  As a result of this policy, Ni contends she worked an additional 45 minutes each day in the evenings.  (FAC ¶ 50.)  This resulted in 3.75 additional hours each week that were uncompensated.  (*Id.*)  Ni explains that managers did not want to authorize overtime but rather insisted that employees work off-the-clock.  As proof that she worked after hours, she has submitted various after-hours text conversations with another Personal Banker or with potential clients.[3]  (Ni Decl. ¶¶ 28, 29.)  Ni also provides an example of an after-hours text message to a client in which she states she has to talk with her managers, which Ni says is proof she communicated with her manager after hours about her after-hours work.  (Ni Decl. ¶ 32.)

Ni asserts that Tellers at the branches she worked at also were not allowed their full hour or half-hour lunch and forced to work, uncompensated, through lunch.  She identifies two Tellers and another Personal Banker with whom she worked who she observed working through meal breaks and who shared with her that they were instructed by their common manager not to record overtime hours.  The two Tellers she identified were part-time

---

[3] Ni has attached to her Declaration certain text communications in Chinese.  The Court cannot consider these text messages unless they are fully translated with a certified translation.  8 C.F.R. § 1003.33.

employees, however, who do not have claims for overtime.[4]  According to HSBC, Tellers "were more often part-time employees."  (Chichos Decl. Ex. G & ¶ 24.)

In addition to her personal experience and what she observed at the branch(es) where she worked, she has submitted an affidavit from Raymond Gordon-Brown, a Personal Banker who worked principally in Brooklyn from in or about June 2013 through March 2022, although he attests he worked at two Manhattan branches between 2020 and 2021.[5]  (GB Decl. ¶ 1.) Gordon-Brown alleges that he worked Monday through Friday from 8:30 a.m. to 5:30 p.m. and twice per month on Saturdays from 9:00 a.m. to 1:00 p.m.  (*Id.* ¶ 3.)  Gordon-Brown attests that his managers in Brooklyn and Manhattan required him to clock out for lunch for one hour but that he actually often worked through lunch and was not paid for that work.  (*Id.* ¶ 5-6, 9.)  He also attests that he spoke with two other Personal Bankers at his branches who experienced the same issues.  (*Id.* ¶ 10.)  He also attests that he was forced to work uncompensated hours after the branch closed in the evening.  (*Id.* ¶ 11.)  He estimates that "most days of the week" he worked between 30 minutes and an hour of uncompensated time to meet performance expectations and KPI standards.  (*Id.* ¶ 15.)  He also attests that he "routinely" took short rest breaks of under twenty minutes for which he clocked out and was not compensated.  (*Id.* ¶ 18.)

Ni also claims the same unlawful practices existed at two branches in Queens.  She attests that a branch manager from HSBC's Forest Hills Branch told her that Personal Bankers

---

[4] Records produced in discovery show that the two Tellers identified often recorded lunches of less than one hour or no lunch break, which HSBC says is consistent with part-time work.

[5] HSBC disputes that Gordon-Brown worked at any location in Manhattan because his performance evaluations in 2020 and 2021 were completed by the Brooklyn branch manager.  The fact that a Brooklyn manager completed the performance evaluation is not dispositive on the issue of whether Gordon-Brown worked at two Manhattan branches, and the Court accepts Gordon-Brown's description of the location of his work for purposes of this motion.

and Tellers at the Forest Hills branch were required to work uncompensated through lunch breaks, while they were clocked out.  (*Id.* ¶ 16.)  She further identifies a supervisor at a Flushing branch who sought to recruit her to work there and sent her a text message that said there was "No down time. U go nuts everyday, everymin," which Ni understood to mean that employees at that branch do not take meal breaks.  (*Id.* ¶ 17.)  However, with respect to these two branches in Queens, Ni testified that neither manager told her that people at those branches were not paid for the time they worked through lunch.  (Ni Dep. Test. Day 2 90:9-12; 91:24-92:2.)

In support of her argument that a nation-wide collective should be conditionally certified, Plaintiff also relies on the fact that there are two individuals who were but have since withdrawn as Plaintiffs — former Plaintiffs Hayranian and Garcia — who worked in other states. Hayranian worked as a Teller from on or about October 7, 2019 to November 2019, at which time he became a Personal Banker.  (FAC ¶ 40.)  He worked at three different HSBC branches in California.  (*Id*.)  His employment terminated in or about December 31, 2021.  (*Id.*)  Former Plaintiff Garcia worked as a Personal Banker in two different HSBC branches in Florida from on or about October 7, 2019 to in or about June 2020.  (FAC ¶ 37.)  Both Hayranian and Garcia generally alleged they worked the same hours and off-the-clock hours as Plaintiff Ni Mondays through Fridays, but also alleged they worked from 9:00 a.m. to 2:00 p.m. on Saturdays.  (FAC ¶¶ 38, 41, 44-50.)  Neither has submitted an affidavit in support of the motion for conditional certification.

Plaintiff also supports her motion with time records of Personal Bankers produced in discovery. The records covered 171 employees in 53 branch locations across New York, New Jersey, Pennsylvania, Maryland, California, Florida and Washington for the time period of October 2019 to October 2020. With respect to alleged violations related to uncompensated break time, Plaintiff points to 46 employees who logged out for 20 minutes or less and thus were not compensated. The majority of these employees were located in New York, but two were located in Washington, two were located in California, five were located in Maryland, eight were located in New Jersey, three were located in Pennsylvania, and five were located in Florida. In each employee's case, there were only a handful of this type of log-outs during the period of time covered in the sample. To support the allegations that employees worked off-the-clock, Plaintiff also points to time records showing that a large number of employees worked 40-hour weeks consistently during the period surveyed and asks the Court to infer from the absence of more variation in hours that off-the-clock time must have been worked.[6] (Lee Decl. Exhs. 8-37, 89.)

Discovery also has revealed that Personal Bankers and Tellers are required to enter hours worked into HSBC's timekeeping system to the nearest minute every day. (Chichos Dep. 31:9-11, 76:1-4; Chichos Decl. Exh. C.) HSBC's nationwide policy requires that employees "record all time worked daily, including the actual time they begin and end each work period (including any pre-shift or post-shift time worked) and the time that they begin and end their meal periods." (Lee Decl. Exh. 4.) Defendant's policy also states that "from time to time,

---

[6] These records included those of former Plaintiff Hayranian.

managers may require that non-exempt employees work beyond their regular schedules." (*Id.*) Its policy also states that if an employee takes a rest break, they must remain clocked-in and that all work over 40 hours in a week must be paid, even if unauthorized.  HSBC prohibits off-the-clock work.  (ECF No. 77-1, Overtime Policy; Chichos Decl. Exh. B, Work Hours Policy.)  Its policy also requires that employees be completely relieved of work duties while taking a lunch break.  (Id.)  If an employee realizes they incorrectly submitted time, they can ask their manager to make an adjustment.  (Chichos Decl. Exh. C, Time Reporting Policy.)  HSBC trains employees on its timekeeping policies.  (Chichos Decl. ¶¶ 30-32.)

Plaintiff construes Defendant's policies to preclude approval of overtime when it is needed for something other than the inability to complete a preassigned set of daily tasks in eight hours, although this is not what the policy says.  However, both Ni and Gordon-Brown attest that supervisors would reprimand them if they recorded unauthorized overtime.  (Ni Decl. ¶¶ 4, 5, 7; GB Decl. ¶ 10; Exh. 4.)  And, because managers are required to review employee hours daily, Plaintiff states that supervisors know if employees are not recording all their hours or if they are recording unauthorized overtime hours.  Plaintiff also asserts that Personal Bankers and Tellers must record hours every day at the end of the regular workday and are unable to record their true hours worked because there is no way to enter evening hours after they have already input their hours, notwithstanding Defendant's policy that permits an employee to correct time entries on a later date.  She also asserts that employees were required to record either a 30- or 60-minute lunch break but work through those breaks and that this policy also precluded them from accurately recording time worked over lunch.

8

**LEGAL STANDARD**

The FLSA provides that "any one or more employees" may bring an action against an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  To become parties to such an action, employees other than the named plaintiff(s) must opt in by filing written consents in the court in which the action is brought.  *Id.* "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).  Orders authorizing notice to potential collective action members are often referred to as orders conditionally "certifying" a collective action, even though the FLSA itself does not provide for Rule 23-style certification.  *See, e.g., Guillen v. Marshalls of MA, Inc.*, 750 F.Supp.2d 469, 475 (S.D.N.Y. 2010) ("*Guillen I*"); *Myers*, 624 F.3d at 555, n.10.  Accordingly, the dissemination of notice in an FLSA collective action is a case management tool that courts may employ in "appropriate cases," including where notice will facilitate swift and economic justice.  *See id.*

Courts in this Circuit apply a two-step method for certification of a collective action under Section 216(b) of the FLSA.  In the first step – known as "conditional certification" – the named plaintiff must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *See Myers*, 624 F.3d at 55 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  If the plaintiff

can make such a showing, the trial court may send a notice to potential opt-in plaintiffs. *Id.* At the second stage, which typically occurs after discovery has been completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiff(s). *See Myers*, 624 F.3d at 555. If not, the court may decertify the collective action and dismiss the opt-in plaintiffs' claims without prejudice.

During the initial "conditional certification" stage, the requirement of a "modest factual showing" cannot be satisfied solely by unsupported assertions. *Id.* However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a low burden of proof. *Id.* (emphasis in original); *accord Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 4, 2006) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038 (JG) (RER), 2006 U.S. Dist. LEXIS 60457, at *1-2 (E.D.N.Y. Aug. 22, 2006)) ("a plaintiff's burden at this preliminary stage is 'minimal'"). A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is generally a sufficient basis from which to infer a "common policy" required for conditional certification at this stage. *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2015 U.S. Dist. LEXIS 153730, at *9 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered in this inquiry include a plaintiff's own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013). In

an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff. *See Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 U.S. Dist. LEXIS 89254 (S.D.N.Y. June 18, 2013) (granting conditional collective action certification of all tipped employees at a single Bareburger location based on one employee's declaration).

When substantial discovery has been conducted, courts sometimes apply an elevated or intermediate scrutiny to a collective certification motion because the rationale underlying the more lenient standard is not applicable. *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016); *Brown v. Barnes & Noble, Inc.*, 16 Civ. 7333, 2019 WL 5188941 (S.D.N.Y. Oct. 15, 2019). However, even under this standard, the Court may not "resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *Korenblum*, 195 F. Supp. 3d at 480. But, it should deny conditional certification if it determines that the solicitation of additional opt-ins through court-authorized notice would not promote efficient resolution of common issues. *See Hoffman-La Roche, Inc.*, 493 U.S. at 169-70, 110 S.Ct. 482; *see also Korenblum*, 195 F.Supp.3d at 487. In this case, although some discovery has occurred, it has not been as extensive as in those cases that have applied the intermediate level of scrutiny. Therefore, the Court applies the modest standard here.

**ANALYSIS**

1. <u>Conditional Certification</u>

This case presents a fairly unique claim. HSBC's nationwide written policies state that employees are entitled to one paid 15-minute, duty-free rest break every four hours and that

rest breaks count as hours worked and are paid.  Its nationwide written policies also require that employees record all time worked and be paid for all time worked, even if that work was unauthorized overtime (although employees may be disciplined for working unauthorized overtime).   Its nationwide written policies further state employees must be fully relieved of duty during lunch breaks and must record the time they start and end lunch.

Nevertheless, Plaintiff claims in essence that managers across the country routinely violate or sanction violations of these nationwide policies by requiring employees to clock out for break time so that it is unpaid, to work through purported lunch breaks, and to not record hours worked outside regularly scheduled hours.  Similarly, Plaintiff claims in essence that Personal Bankers and Tellers across the nation routinely violate HSBC policy by failing to accurately report their hours for fear of being reprimanded and not meeting performance expectations and that they do not utilize the available method for correcting inaccurately recorded time even though they are trained on the policies.  Thus, the common policy to which the putative collective has been subjected appears to be the policy of disregarding the written timekeeping policies of HSBC and instead requiring employees to work off-the-clock.  Plaintiff contends that the members of the putative class were similarly situated insofar as they were all subjected to the same policy of disregarding HSBC's written policies in favor of requiring off-the-clock, uncompensated work.

With regard to uncompensated break time of twenty-minutes or less, the time records show that about 27% of the employees sampled recorded a break of twenty minutes or less. The maximum number of breaks of this nature recorded by any one employee was 29, with the

majority recording less than 10 such breaks in the time period sampled, and a total of approximately 151 times during the period when breaks of twenty minutes or less are recorded and uncompensated. Plaintiff's own time records show that during her employment she recorded breaks of twenty minutes or less on five occasions.  Thus, with regard to uncompensated break time, it appears the issue of uncompensated breaks is not widespread or as frequent as pleaded on the complaint.  Nonetheless, there are employees in all states sampled who recorded uncompensated breaks, suggesting the issue identified by Plaintiff was not isolated to the branches where she worked or even branches in New York.  And, while HSBC disputes that these breaks had to be compensated because they were shortened lunch breaks or another kind of lawful uncompensated break, the Court may not make merits determinations on this motion.  At this point, Plaintiff has met her modest burden to suggest that Personal Bankers in all the states sampled are similarly situated insofar as they might have been subjected to a common policy that failed to compensate them for breaks of twenty-minutes or less, notwithstanding HSBC's written policy to the contrary.

With respect to working through lunch and after-hours work, the evidence presented suggests that this might have occurred at the branches where Plaintiff, Gordon-Brown and former Plaintiffs Hayranian and Garcia worked.  This evidence consists of deposition testimony from Plaintiff and HSBC witness Todd Cichos, as well as the Declarations of Plaintiff and Gordon-Brown.   It also consists of records produced by Plaintiff showing that on a few occasions she communicated with potential clients and managers after hours.

Unlike the time records that support Plaintiff's contention that employees clocked out for twenty minutes or less and were not paid in violation of the FLSA, no time records reflect off-the-clock work.  That is because, by its very nature, off-the-clock work would not be recorded.  Plaintiff suggests time records showing even, 40-hour weeks for many employees are "robotic" in nature and support her claim that employees were subjected to a common policy of requiring off-the-clock work.  She relies on *Hernandez v. Jrpac Inc.*, 14 Civ. 4176, 2016 WL 3248493 (S.D.N.Y. June 9, 2015), for this proposition.  Plaintiff reads too much into *Hernandez*, a decision issued after a bench trial that involved employees at a single restaurant. In that case, the time records did not show standard 40-hour work weeks.  Rather, the time records showed employees worked the same amount of overtime consistently each week in "odd-lot, fractionated total hours" such as 41.1 or 46.6 hours every week.  The court in that case found, after trial, there was evidence that that time sheets were fabricated after the fact and jerry-rigged to fit hours to required wage rates.  At the same time, there was evidence that the restaurant delivery workers' schedules varied depending on traffic at the restaurant and delivery orders.  Here, the time records sampled are not all uniform-- there is evidence that Plaintiff and others did put in for and were paid overtime on occasion.  There is also evidence in the time records produced showing that employees on occasion recorded lunch breaks of less than an hour, suggesting that they worked for part of their lunch hour and were paid for that work time.  Thus, the records are not completely uniform and do not, without more, reflect a common policy of requiring employees to work off-the-clock through lunch and after hours, uncompensated.

14

Nevertheless, Plaintiff has provided sworn testimony and a declaration, as well as a declaration from Gordon-Brown, attesting that Personal Bankers were required to work off-the-clock after hours and work through purported lunches.   While it appears that HSBC may have strong defenses on liability or that the alleged unlawful practices may not have affected members of the putative collective to the extent Plaintiff claims, at this point, the Court does not consider the merits of the claims on a motion for conditional certification.  Instead, Plaintiff has met her modest burden to demonstrate Personal Bankers across the country may not have been paid appropriately for breaks and may have worked off-the-clock because they were subjected to a common policy where managers disregarded written timekeeping policies and forced Personal Bankers to work through purported lunch breaks and off-the-clock after hours.

The same is not true for Tellers, who performed a different function than Personal Bankers, were not required to solicit clients, and often worked part-time.   Indeed, the only Tellers named by Plaintiffs were part-time employees who never recorded more than 40 hours worked in a single week and thus have no claim to overtime. *See, e.g., Trinidad v. Pret A Manger* (USA) Ltd., 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013).  No time records support Plaintiff's claims as to Tellers.  No declarations are provided by Tellers.  Plaintiff cannot on this record extrapolate her own experience as a Personal Banker to a nationwide collective that includes Tellers. *See Fernandez v. Sharp Mgmt. Corp*., 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (declining to collectively certify other positions where "the Plaintiffs' evidence provides the Court with no objective criteria for determining whether [employer] has a 'common plan or

policy' with regard to any job title except their own, much less all the job titles plaintiffs are seeking to include in their collective").

Accordingly, the motion is granted with respect to all Personal Bankers employed by the Defendant in the United States from January 13, 2020, through the date when HSBC ceased to employ Personal Bankers, February 22, 2022. (Cichos Decl. ¶ 7.)  The Court, will at a later date, determine whether any opt-in plaintiffs are in fact similarly situated and whether the case should be tried as a collective.

2. Equitable Tolling

Ordinarily, the statute of limitations in an FLSA collective action continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit.  29 U.S.C. § 256(b).  However, equitable tolling may be warranted to avoid inequitable circumstances, where plaintiffs have acted with reasonable diligence in pursuing their claims, but where "a substantial number of class members may . . . be time-barred through no fault of counsel or the class representative." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).  Here, Plaintiff contends equitable tolling is necessary because Defendant "manufactured" delays.  Accordingly, she requests that the Court toll the statute of limitations for all potential opt-in plaintiffs from the date of the filing of the Complaint until the last day of the opt-in Period.

"Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights."  *Andon v. SDG Props., Inc.*, No. 17-cv-7876 (ALC) (KHP), 2018 U.S. Dist. LEXIS 140913 at *3 (S.D.N.Y. Aug.

16

20, 2018) (citation and internal quotation omitted).  Because "the application of the equitable tolling standard is 'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,'" equitable tolling is generally not appropriate at the conditional certification stage.  *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017) (quoting *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016)).

Here, Plaintiff fails to allege any exceptional circumstances.   And, contrary to what Plaintiff contends, the Court does not agree that Defendant manufactured delays.  This Court has closely monitored discovery to ensure that it is administered consistent with Federal Rule of Civil Procedure 1.  What Plaintiff characterizes as "delays" were fairly typical time periods for raising objections and complying with discovery.  Thus, equitable tolling is not warranted.

Notwithstanding the above, while the Court will not toll the limitations period at this juncture, the Court's ruling on this issue is made without prejudice to Plaintiff's right to resubmit this request after additional discovery and/or facts warrant such an application.  *See, e.g.*, *Cuaya*, 2020 U.S. Dist. LEXIS 166324, at *41-42 (denying equitable tolling without prejudice because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

3.  <u>Notice and Opt-In Period</u>

Plaintiff has provided a proposed form of notice that will need to be modified based on this Opinion and Order.  However, there are a few issues HSBC raised with respect to the notice that need to be addressed before the parties submit a new form of notice for court approval.

First, Plaintiff requests a 90-day opt-in period.  The standard opt-in period in this Circuit, following conditional certification, is 60 days.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)).  To extend the notice period beyond the typical 60-day timeframe, Plaintiff needs to show the presence of special circumstances warranting such an extension.  *See Yap*, 146 F. Supp. 3d at 566-67 (limiting opt-in period to 60 days where plaintiffs failed to demonstrate "special circumstances" that would warrant a 90-day opt-in period).  Plaintiff has failed to show any special circumstances.  Therefore, the opt-in period will be 60 days.

Next, HSBC objects to the notice referring to state laws.  This concern is valid, as the grant of conditional "certification" concerns federal FLSA claims only.  Thus, reference to state laws shall be removed from the notice.  HSBC similarly objects to the description of the claims. It requests that the notice mailed to putative members of the collective refer to claims for overtime based on off-the-clock work and uncompensated break time.  The Court finds that the description of the claims could be improved and directs the parties to meet and confer on this issue and submit a new form of notice for the Court's approval.

Finally, HSBC requests a third-party administrator distribute the approved notice to last-known addresses of putative members of the collective and that opt-ins be sent to the Clerk of the Court.  The Court agrees that it is likely most efficient to have a third-party administrator send the notice forms to putative members of the collective and that the best practice is for

consent forms to be sent to the Clerk of the Court. *See Mikityuk v. Cision US Inc.*, 2021 WL 1750370, at *11 (S.D.N.Y. May 4, 2021) ("It is more consistent with the [FLSA] to have opt-in Plaintiffs send their consent forms to the Clerk of Court."); *see also Velasquez v. Digital Page, Inc.,* 2014 WL 2048425, at *14 (E.D.N.Y. May 19, 2014)(collecting cases).

Plaintiff requests that the notice also be posted at HSBC locations. It is unclear why this would assist with giving notice when it is undisputed that HSBC no longer employs Personal Bankers, and therefore they would not likely see a posted notice. In this case, HSBC has addresses for its former employees and a direct mailing is likely the best way of notifying them of the pendency of this action.

The parties shall file a revised form of notice with the Court by no later than February 11, 2024. If the parties cannot agree on certain aspects of the proposed notice, they shall set forth their respective positions in a joint letter to the Court accompanying the notice, not to exceed six pages in length, attaching a proposed notice form clearly indicating the language preferred by each party.

4. Discovery of Class List

Plaintiff requests that Defendant be ordered to provide contact information for the potential opt-in plaintiffs, including their names, titles, last known phone numbers, addresses, and emails. Courts in this District routinely allow plaintiffs to receive contact information for potential opt-in plaintiffs, including last known addresses, telephone numbers, and emails. *See, e.g., Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y.

Jan. 4, 2016).  Thus, by February 15, 2024, Defendant must produce this information for

Personal Bankers for the period of January 13, 2020 through February 22, 2022.

<strong>CONCLUSION</strong>

For the reasons set forth above, Plaintiff's motion for conditional certification of the

FLSA claims (ECF No. 27) is GRANTED in part and DENIED in part.  The Court conditionally

certifies a collective of Personal Bankers for the period January 13, 2020 through February 22,

2022.  The parties shall submit a revised proposed notice to the putative collective by no later

than **February 11, 2024**, consistent with the guidance provided in this Opinion and Order.

**SO ORDERED.**

DATED:        New York, New York
              January 29, 2024

_____
KATHARINE H. PARKER
United States Magistrate Judge