UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY NI, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class,*

                Plaintiff,

    v.

HSBC BANK USA, N.A.,

                Defendant.

**Case No.:** 23-cv-00309

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DISQUALIFICATION OF DEFENSE COUNSEL AND FOR SANCTIONS

**LEE LITIGATION GROUP, PLLC**
C. K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... ii
TABLE OF AUTHORITIES ................................................................................................. iii
I.    INTRODUCTION ........................................................................................................ 1
II.   ARGUMENT ................................................................................................................ 2
    A.   Ms. Vogel Faces the Possibility of Personal Liability ......................................... 2
    B.   Ms. Vogel and HSBC's Interests Do Not Align .................................................. 5
    C.   Plaintiff May Seek Disqualification of Defense Counsel's Representation of HSBC ........ 7
    D.   Plaintiff's Motion for Sanctions ............................................................................ 8
III.  Conclusion ..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*A.I. Credit Corp. v. Providence Wash. Ins. Co.*, 2010 U.S. Dist. LEXIS 103634 (S.D.N.Y. Sep. 30, 2010) ................................................................................................................................... 6
*Akagi v. Turin Hous. Dev. Fund Co.*, 2017 U.S. Dist. LEXIS 41321 (S.D.N.Y. Mar. 22, 2017) ....................................................................................................................................... 7, 8
*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) ..................................................... 2, 3, 4
*Mercado v. City of N.Y.*, 2010 U.S. Dist. LEXIS 103634 (S.D.N.Y. Sep. 30, 2010) ............. 2, 6, 7
*New York v. United Parcel Serv., Inc.*, 2016 WL 10672076 (S.D.N.Y. Sept. 2, 2016) ................. 6
*Sidor v. Zuhoski*, 261 A.D.2d 529 (App. Div. 2nd Dept. 1999) ....................................................... 8

**Rules**

New York Rules of Professional Conduct 1.7 ............................................................................ 1, 7
New York Rules of Professional Conduct 1.9 ............................................................................ 1, 7

I.    **INTRODUCTION**

Confronted with a conflict between their two clients, Defendant has elected to respond with misleading characterizations and an overlooking of many of the points that were detailed in Plaintiff's memorandum-in-chief ("Pf. Mem."). In its claim that no conflict between Ms. Vogel and HSBC exists or could exist, Defendant appears to raise three (3) main arguments.

**First**, Defendant's attorney claims that there is no "realistic possibility of personal liability [for Ms. Vogel]." To support this claim, Defendant's counsel presents, with no evidentiary backing, statements and promises which could never bind HSBC's future defenses or conduct. Plaintiff addresses the inadequacy of Defense counsel's representations and promises to the Court below.

**Second**, Defendant claims that Plaintiff has not presented evidence that the interests of HSBC and Ms. Vogel do not align. This is again false. Plaintiff refers to Pf. Mem. at 4-6 and also to the specific instances identified below where HSBC and Ms. Vogel's interests diverged in this action.

**Three**, Defendant argues that (should they be disqualified from representing Ms. Vogel) they must not be disqualified from representing HSBC as (i) Plaintiff is not a proper party to request disqualification under Rule 1.9 of the New York Rules of Professional Conduct and (ii) Ms. Vogel previously consented to sharing with HSBC any communications she made to her counsel. However, Plaintiff seeks disqualification under Rule 1.7, which addresses obligations to current clients, as well as Rule 1.9, which addresses obligations to former clients. Additionally, in the case relied upon by Defendant, *Mercado v. City of N.Y.*, the court only permitted joint representation upon submission of a declaration to the Court of the conflicted parties' waiver of any individual defenses. *Mercado v. City of N.Y.*, 2010 U.S. Dist. LEXIS 103634, at *27 (S.D.N.Y.

Sep. 30, 2010) ("Jones, Nyame and Goldbourne have each submitted declarations to the Court purporting to waive any conflict of interest. These declarations express a general understanding of the planned unified defense and the potential for conflict, but do not acknowledge and expressly agree to waive the personal defenses that they will forfeit as a result of this joint representation…"). No such submission has been made here.

Despite the bombastic language present in Defendant's opposition brief, the facts of this case indeed demonstrate a conflict of interest needing redress. Defendant's vague declaration in opposition makes it clear that Defendant is reserving the right to mount an individual defense (blaming Ms. Vogel) for any violations experienced by Plaintiff. Therefore, despite lawyer driven statements to the contrary, and for all the reasons previously briefed and addressed below, Plaintiff's Motion for Disqualification must be granted.

## II. ARGUMENT

### A. Ms. Vogel Faces the Possibility of Personal Liability

Defense counsel falsely claims that there is no "realistic possibility of personal liability [for Ms. Vogel]." To support this assertion, Defendant submits an affidavit from Todd Cichos [ECF 224], which makes vague assertions and clearly reserves HSBC's right to mount an individual defense, blaming Ms. Vogel and other bank managers for the claims brought by Plaintiff. Moreover, the vague declaration from Mr. Cichos does nothing to indicate that she is not a *Carter* factor employer, who could be sued for contribution. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (The Carter factors include whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.").

2

As detailed below, the statements in Mr. Cichos declaration are irrelevant to the issue of Ms. Vogel's and HSBC's conflict of interests.

- "Ms. Vogel, as a branch manager, would collaborate with her regional manager and HSBC human resources in making decisions regarding hiring and terminating personal bankers, such as Plaintiff Kelly Ni." Cichos Decl. at ¶5 [ECF 224]

The above statement from Mr. Cichos supports Ms. Vogel's role as a *Carter* factor employer. The statement indicates that Ms. Vogel did have power to hire and fire, which corresponds with Plaintiff's deposition testimony that she was given an offer of employment directly by Ms. Vogel. *See* ECF 108-5 (Plaintiff's Deposition Transcript) 36:22-37:1 (Q. Okay. And who did you receive an offer of employment from? A. My manager, Yang Vogel).

- "Ms. Vogel was obligated to follow HSBC policies and procedures in supervising Plaintiff, including HSBC's time reporting policies and procedures." Cichos Decl. at ¶6 [ECF 224].

The above statement from Mr. Cichos says nothing regarding any joint defense HSBC intends to advance. No statement is made here that HSBC is representing that Ms. Vogel followed HSBC's policies and procedures.

- "The hours of the branches that Ms. Vogel managed were not set by Ms. Vogel." Cichos Decl. at ¶7 [ECF 224].

The above statement again appears calculated to leave open the opportunity to label Ms. Vogel as a *Carter* factor employer. While the *branches'* hours may not be set by Ms. Vogel, the employees who worked at those branches have schedules set by branch managers. This fact was recognized by Ms. Vogel herself, who acknowledged that she once tasked Plaintiff with setting the branch employees' weekly schedules and acknowledged reprimanding Plaintiff for giving herself a schedule which permitted Plaintiff the opportunity to leave early. Mr. Cichos himself recognized Branch Managers' obligation to set schedules at his deposition, "[Branch] [M]anagers scheduled lunch breaks[.]" *See* ECF 96 (Todd Cichos Decl. dated Nov. 21, 2023) at ¶ 26. Defense counsel also acknowledged Branch Managers' duties to set schedules before claiming the opposite

3

argument in his briefing of this motion. *Compare* ECF 95 (Def. Memo. In Opp. to Coll. Cert.) at 6 ("As for work schedules, personal bankers' branch managers set their schedules…"); *with* ECF 223 (Def. Memo. In Opp. to Disqualif.) at 6 ("employee schedules were ultimately dictated by the branch hours, which were not set by Ms. Vogel."). Once again, Defendant's affiant submits no testimony which would later bar Defendant from changing its position, which it has already done once, and seeking a contribution from Ms. Vogel as a *Carter* factor employer.

- "As branch manager, Ms. Vogel did not have final authority to set rates of pay or how employees would be paid. The hours of the branches that Ms. Vogel managed were not set by Ms. Vogel." Cichos Decl. at ¶8 [ECF 224]. "Ms. Vogel would not maintain employment records which are maintained by HSBC Human Resources and Employee Relations." Cichos Decl. at ¶8 [ECF 224].

While Ms. Vogel may not maintain records, she would have had full access to them. It is demonstrably incorrect that she had no authority to set pay. Ms. Vogel as a manager had the ultimate authority to determine employees' performance reviews which could grant or block those under her management from receiving bonuses. Each branch manager retained discretion in how to utilize KPIs as part of a personal banker's performance evaluation and HSBC did not mandate a particular performance rating based on KPIs. *See* ECF 96 (Todd Cichos Decl. dated Nov. 21, 2023) at ¶ 18. In this way, Ms. Vogel had ultimate authority to set compensation for those under her supervision.

Nothing within Todd Cichos's declaration renders impossible, or even improbable, Ms. Vogel's personal liability. Further, despite claims of a joint defense and common interest, HSBC's vague declaration appears calculated to ensure HSBC does not waive the ability to defend this action by laying the blame for alleged wage violations on Ms. Vogel. Perhaps sensing this problem, Defense counsel, without affidavit or supporting evidence, makes a future promise not to sue Ms. Vogel for contribution. Def. Mem. at 7 ("HSBC has not and will not implead Ms. Vogel into the present Action or seek contribution from her."). There is nothing binding to this

4

promise and the non-binding promise for future conduct does not alleviate the very real conflict that exists now.

B. Ms. Vogel and HSBC's Interests Do Not Align

Plaintiff's memorandum-in-chief identifies the following two interests as inapposite and creating a conflict of interest between Ms. Vogel and HSBC: (i) Defendant HSBC has a clear interest in claiming that any wage violations occurred due to idiosyncratic issues unique to Ms. Vogel and a few other branch managers, and (ii) Ms. Vogel, on the other hand, has an interest in claiming that she merely followed guidance and policies put in place by Defendant HSBC. The two conflicting interests cannot be reconciled and, therefore, require disqualification.

More than speculation, HSBC testimony already indicates that they will employ a defense counter to Ms. Vogel's interests. A list of testimony laying liability at the feet of branch managers is provided in Plaintiff's memorandum-in-chief at p. 6. Such testimony includes the following:

- **Q:** And is there anybody who monitors the -- the branch manager's review of employees' time records? … **A:** A branch manager would generally refer, would review time entry[.] **Exhibit E** at 80:14-22. **Q:** Okay. When you see somebody with three consecutive pay stubs with the identical amount of hours worked, which coincidently are her scheduled hours, would you be concerned that she was not getting paid to the minute for all of her hours worked? **A:** I would complete a thorough investigation. I would review all of the information. *Id.* 116-13-21

- Once Plaintiff's timesheet was completed, her manager [Ms. Vogel] reviewed it. *See* ECF 106 (Def. 56.1 Statement) at ¶ 45.

- Each branch manager retained discretion in how to utilize KPIs as part of a personal banker's performance evaluation and HSBC did not mandate a particular performance rating based on KPIs. *See* ECF 96 (Todd Cichos Decl. dated Nov. 21, 2023) at ¶ 18

- [S]he conceded that her only communications on which she relies for her Complaint were with her own two individual managers at her branch. *See* ECF 95 (Def. Memo. In Opp. to Coll. Cert.) at 25.

- **Q:** How do you know she [Jeff Wang's Branch Manager] reviewed your time entries? **A:** That's the branch manager's responsibility. *See* **Exhibit F** (Excerpts of Jeff Wang Dep.) at 37:8-12. **Q:** [D]id you actually see her reviewing the time

5

records? **A:** No. *Id.* at 37:14-17. **Q:** She never complained to you about how the time entries that you submitted were rounded to the nearest hour[.] **A:** No. *Id.* at 37:21-25. **Q:** Did she ever tell you that your time entries were incorrect? **A:** No. *Id.* at 38:10-12. **Q:** Do you know if she actually reviewed your time records? **A:** I don't know. *Id.* at 38:13-15.

In arguing that Ms. Vogel and HSBC will mount a joint defense, Defendant relies on cases such as (i) *New York v. United Parcel Serv., Inc.,* (ii) *A.I. Credit Corp. v. Providence Wash. Ins. Co.,* and (iii) *Mercado v. City of N.Y.* These cases actually demonstrate the impossibility of Defendant's position and demonstrate the continuing conflict. *United Parcel Serv., Inc.,* 2016 WL 10672076, at *2 (S.D.N.Y. Sept. 2, 2016); *A.I. Credit Corp. v. Providence Wash. Ins. Co.*, 2010 U.S. Dist. LEXIS 103634, at *27 (S.D.N.Y. Sep. 30, 2010); *Mercado v. City of N.Y.,* 2010 U.S. Dist. LEXIS 103634, at *27 (S.D.N.Y. Sep. 30, 2010).

The *United Parcel Serv., Inc.* matter was a suit brought by the Attorney General of New York against UPS due to its failure to implement adequate anti-trafficking measures, such as importation of contraband cigarettes. The Court in that matter determined that Defense counsel could represent UPS and former employee witnesses, who worked as drivers for UPS, without conflict. Instrumental in that ruling was the fact that there was the lack of potential conflict as there was "no chance that they [UPS's former drivers] will be subject to any liability." Here, as described above, Ms. Vogel may be subject to personal liability.

Defendant's remaining cases demonstrate the ongoing conflict and need for disqualification as well. Defendant quotes from *A.I. Credit Corp. v. Providence Wash. Ins. Co.* in support of the idea that there is no conflict where "one party acted as a principal for another and therefore the liability of the parties rose and fell together[.]" Def. Mem. at 8. However, this statement failed to acknowledge *why* the parties' liability rose and fell together in that case. The Court in *A.I. Credit Corp..* acknowledged that a joint defense was only appropriate in that matter because "[the] potential conflict is obviated here because the Agency Agreement between

Martoccia and Providence Washington requires Martoccia to indemnify Providence Washington." Again, in *Mercado v. City of N.Y.*, cited by Defendant, the Court only permitted counsel to represent to conflicting parties where each submitted declarations attesting to the following: (i) a general understanding of the unified defense and potential conflict, and (ii) an express waiver of personal defenses. 2010 U.S. Dist. LEXIS 103634, at *27 (S.D.N.Y. Sep. 30, 2010). Once again, no submission of waiver or informed consent has been made here.

### C. PLAINTIFF MAY SEEK DISQUALIFICATION OF DEFENSE COUNSEL'S REPRESENTATION OF HSBC

Defendant argues that, should they be disqualified from representing Ms. Vogel, they must not be disqualified from representing HSBC as (i) Plaintiff is not a proper party to request disqualification under Rule 1.9 of the New York Rules of Professional Conduct and (ii) Ms. Vogel previously consented to sharing with HSBC any communications she made to her counsel.

However, Plaintiff seeks disqualification under Rule 1.7, which addresses obligations to current clients, as well as Rule 1.9, which addresses obligations to former clients. Regardless of the underlying basis (Rule 1.7 or 1.9), Plaintiff's right to seek disqualification has been recognized by Courts in the Second Circuit. "To this end, federal courts, including courts in the Second Circuit, generally take the view that any party to a lawsuit may raise a potential conflict." *Akagi v. Turin Hous. Dev. Fund Co.*, 2017 U.S. Dist. LEXIS 41321, at *1 (S.D.N.Y. Mar. 22, 2017). Further, the Court has an obligation to treat representations commenced concurrently as concurrent at the time of a disqualification motion. As stated in *Akagi v. Turin Hous. Dev. Fund Co.*: "where counsel have simultaneously represented clients with differing interests, the standard for concurrent representation applies even if the representation ceases prior to the filing of a disqualification motion. This approach prevents attorneys from manipulating their commitments merely by firing the disfavored client, dropping the client like a hot potato, and transforming a continuing

relationship to a former relationship by way of client abandonment." 2017 U.S. Dist. LEXIS 41321, at *1 (S.D.N.Y. Mar. 22, 2017).

Also, guiding Plaintiff's position that Defense counsel must be disqualified from representing HSBC *and* Ms. Vogel, is the language found in the New York State's Appellate Court decision *Sidor v. Zuhoski*, which held that "[a]n attorney who undertakes the joint representation of two parties in a lawsuit should not continue as counsel for either one after an actual conflict of interest has arisen." 261 A.D.2d 529, 530 (App. Div. 2nd Dept. 1999).

Here, Defense counsel has undertaken representation of two parties, met with both parties, and received confidences from both parties, without obtaining a waiver or disclosing the potential for a conflict. In fact, Defense counsel acknowledges that their office has received "confidences" from Ms. Vogel, albeit confidences that she "already consent[ed] to being shared with HSBC[.]" Def. Mem. at 13. How Ms. Vogel has properly consented to the sharing of these confidences with HSBC without waiver or disclosure of the conflict is not explained by Defendant's motion. The existence of these "confidences" demonstrates the conflict. Presumably, these confidences will be deemed to be privileged by Defense counsel should Plaintiff seek their disclosure.

### D. PLAINTIFF'S MOTION FOR SANCTIONS

Defendant defends against their delays regarding Ms. Vogel's deposition using several misrepresentations.

First, the most important misrepresentation is that Plaintiff only sought Ms. Vogel's deposition in February 2024. This is untrue. As appended to Plaintiff's memorandum-in-chief, Plaintiff served a notice for deposition in July 2023 for Ms. Vogel under the heading of the related discrimination action. However, the parties' email correspondence demonstrates that Plaintiff sought Ms. Vogel's deposition as early as June 23, 2024, with an intent to conduct "combined

8

discrimination/wage and hour deposition[s]" as a means of cost efficiency. *See* **Exhibit G** (the Parties' Email Correspondence). This understanding was also addressed at the parties' July 24, 2023, conference with the Court. *see also* **Exhibit H** (July 24, 2023, Conference Transcript) at 12:2-12. Consequently, there was no need to submit a formal notice of deposition under a separate heading for this matter. Notably, Defendant does not even attempt to explain the <u>6-month</u> delay between June 2023 (when Ms. Vogel parties first met and conferred to set deposition dates) and December 15, 2023 (when Defendant provided Ms. Vogel's address for subpoena). Nor does Defendant justify why Plaintiff required a Court Order to obtain production of Ms. Vogel's address.

Second, Defendant states that their withholding of Ms. Vogel's address until December 15, 2023, was proper as the Court denied Plaintiff's request to turn over Branch Managers' contact information in a September 28, 2023, Order. However, the referenced Court Order addressed branch managers from Plaintiff's class sampling and did not address Ms. Vogel specifically who, at the time of that Order, Defense counsel claimed could be reached through their office. *See* ECF 210-1 (Defendant's Initial Disclosures) at 7 ("Defendant may use to support its defenses and may be contacted through undersigned counsel: 1. Yang Vogel…").

Third, Defendant states that "Plaintiff's counsel for the first time asked if Morgan Lewis would represent Ms. Vogel" on March 26, 2024, the day before Ms. Vogel's deposition. Def. Mem. at 13. This is not true. Defense counsel represented previously that they were not representing Ms. Vogel [ECF 132; 133], which is why Plaintiff was required to pay for service of process on Ms. Vogel, rather than merely providing her counsel with her subpoena [ECF 225-4]. Plaintiff's March 26, 2024, inquiry about Defense counsel's relationship with Ms. Vogel was

9

prompted by Defense counsel's March 26 request for a change of venue for Ms. Vogel's deposition, which was subpoenaed to occur at Plaintiff's counsel's office.

Fourth, Defendant claims Plaintiff's counsel improperly reached out to Mr. Needham on October 9, 2023, implying that Plaintiff knew Defendant would represent Mr. Needham and/or that Defendant was willing to produce Mr. Needham for deposition at the time of Plaintiff's contact. *See* Def. Mem. at 12 n. 5. As acknowledged by Defenant, Plaintiff requested the status of Defense counsel's representation on September 29, 2023, but, missing from Defendant's papers, is that (despite Plaintiff's request) Defendant informed Plaintiff's counsel of their intent to produce/represent Mr. Needham on October 12, 2023. *See* **Exhibit I** (Email Correspondence from Defense counsel). Given that Defendant was unclear in their representation and/or production of Mr. Needham, Plaintiff had a right to reach out to determine, among other things, if Mr. Needham would voluntarily appear for deposition.

Fifth, Defendant has tried to distract from their own sanctionable conduct by claiming, in a footnote of their opposition, that Plaintiff's counsel acted "with an extreme discourtesy" in depositions. *See* Def. Mem. at 12 n. 5. As such aspersions are meant to distract from Plaintiff's motion and as Plaintiff's response is hand-cuffed by the 10 page limit for this reply, Plaintiff only responds to clarify. Plaintiff only responds to clarify that missing from Defendant's Opposition is Defense counsel's persistent interruption of Plaintiff's counsel's questioning and coaching of witnesses. As an example, when Mr. Wang was asked at deposition if Defense counsel represented him, Defense counsel interrupted the deposition and responded *for the witness*. ECF 225-2 at 8:18-20. The witness's understanding of his attorney-client relationship (if any) and of the confidentiality of his communications to counsel was relevant. Defense counsel's response for the witness was a clear an improper attempt to coach the witness.

10

**III.     Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court approve this motion in its entirety, and set a briefing schedule to address costs and fees associated with Plaintiff's request for sanctions.

Dated: New York, New York  
      May 13, 2024

Respectfully submitted,

By: */s/ C.K. Lee*  
C.K. Lee, Esq. (CL 4086)

**LEE LITIGATION GROUP, PLLC**  
148 West 24th, 8th Floor  
New York, NY 10011  
Tel: (212) 465-1188  
Fax: (212) 465-1181  
*Attorneys for Plaintiff,*  
*FLSA Collective Plaintiffs,*  
*and the Class*