```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/12/2024
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

KELLY NI, on behalf of herself, FLSA
Collective Plaintiffs, and the Class,

                                      Plaintiff,                  **23-CV-0309 (AS) (KHP)**

               -against-

HSBC BANK USA, N.A.,

                                    Defendant.

                                         **OPINION & ORDER ON MOTION**
                                         **TO DISQUALIFY AND FOR**
                                                **SANCTIONS**

-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

       Plaintiff Kelly Ni ("Ni"), individually and on behalf of others similarly situated, brings this action against Defendant HSBC Bank USA, N.A. ("HSBC") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New York Labor Law ("NYLL"). Plaintiff has moved to disqualify counsel for HSBC, Morgan Lewis & Bockius, LLP ("Morgan Lewis") from representing both HSBC, and one its former employees, Ni's former branch manager Yang Vogel ("Ms. Vogel"). Plaintiff has also moved for sanctions against Morgan Lewis for alleged gamesmanship surrounding the deposition of Ms. Vogel. For the reasons set forth below, Plaintiff's motion is DENIED in its entirety.

<strong>Background</strong>

       The factual background of this action has been previously summarized in other opinions by the undersigned, and this opinion only recites those facts relevant to the instant motions. *See Ni v. HSBC Bank USA, N.A.*, No. 23-CV-00309 (AS) (KHP), 2024 WL 323284, at *1 (S.D.N.Y. Jan. 29, 2024).

Plaintiff Ni worked for Defendant in New York City as a Personal Banker from on or about October 7, 2019 to March 15, 2021.  (First Amended Complaint ("FAC") ¶ 34.)  She worked predominantly at a Park Avenue branch, but attests she worked at other New York City branches on an as-needed basis.  (ECF No. 77 Declaration of Kelly Ni, "Ni Decl." at ¶¶ 1, 10.)  She contends that she always worked through lunch but was not paid for that work time, which she contends equates to two-and-one half hours each week of her employment.  (FAC ¶ 46; Ni Decl. ¶¶ 4, 9.)  She contends that during her lunch breaks she filled in for Tellers and attended to customers who walked into the branch.  She also alleges that she would clock out for short rest breaks, all less than 20 minutes, and was not compensated for those breaks in violation of federal and state wage laws.  (FAC ¶ 47.)  Ni also alleges that during the COVID pandemic she and other Personal Bankers in the collective were forced to work in the evenings to solicit new clients in order to meet sales expectations and fulfill so-called "Key Performance Indicators" or "KPIs." (FAC ¶ 48.)  She contends the evening work that she was forced to engage in was off-the-clock and uncompensated, explaining that the unreasonably high expectations in the KPIs resulted in a pressure-filled culture where employees could not meet expectations unless they worked uncompensated extra hours off-the-clock.  (*Id.* and Ni Decl. ¶¶ 19-23, 25.)

Ni contends that from March 15, 2020 until March 15, 2021, managers instituted a policy requiring off-the-clock work but specifically told her and other Personal Bankers that no one was to work more than 40 hours per week.  (FAC ¶ 49.)  As a result of this policy, Ni contends she worked an additional 45 minutes each day in the evenings.  (FAC ¶ 50.)  This resulted in 3.75 additional hours each week that were uncompensated.  (Id.)  Ni explains that

2

managers did not want to authorize overtime but rather insisted that employees work off-the-clock. As proof that she worked after hours, she has submitted various after-hours text conversations with another Personal Banker or with potential clients. (Ni Decl. ¶¶ 28, 29.)

### Procedural History

On January 29, 2024, the undersigned issued an opinion and order granting in part Plaintiff's motion for conditional certification. (ECF No 121.) Specifically, the order conditionally certified a collective of Personal Bankers for the period January 13, 2020 through February 22, 2022. *Id.* Discovery on Plaintiff Ni's individual claims was due to close on Wednesday, March 27, 2024. ECF No. 132. However, at the time the schedule was set, Defendant had not yet confirmed whether or not it would produce Ms. Vogel – a former employee — for a deposition or whether Plaintiff had to proceed with a subpoena to obtain the testimony. *Id.* On March 12, 2024, Plaintiff subpoenaed Ms. Vogel to appear on March 27, 2024 to provide deposition testimony.[1] (ECF No. 225-4.) On March 26, 2024, counsel for the Defendant emailed Plaintiff's counsel and informed him that defense counsel would be representing Ms. Vogel at the deposition. (ECF No. 210-5.) Plaintiff immediately objected, canceled the deposition, and told defense counsel that he would move for sanctions. *Id*.

### Legal Standard

Plaintiff seeks disqualification of Morgan Lewis from representing Ms. Vogel under New York Rule of Professional Conduct ("NYRPC") 1.7, and disqualification from representing HSBC

---

[1] Plaintiff notes that she initially noticed the deposition of Ms. Vogel on July 21, 2023 to take place on August 30, 2023. That deposition was noticed in a different case between the same parties asserting claims of discrimination that has since been discontinued following stipulation and agreement between the parties. ECF No. 210-3. The previously noticed deposition was intended to address claims in both that action and this one.

under NYRPC 1.9. (ECF No. 211, Memorandum In Support of Motion, "Mot.") Rule 1.7 provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude. . . the representation will involve the lawyer in representing differing interests." NYRPC 1.7(a)(1). Since Rule 1.9 governs duties to former clients, it is only relevant if I conclude that Morgan Lewis must be disqualified from representing Ms. Vogel, which I do not.

"Generally, disqualification motions are disfavored, as they 'are often interposed for tactical reasons, and ... even when made in the best of faith, such motions inevitably cause delay.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983)). Therefore, motions for disqualification are "'subjected to a high standard of proof.' " *Id.* (citing *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009)). In deciding disqualification motions, a court balances a client's right freely to choose their counsel against the need to maintain the highest standards of the profession. *Pagan v. C.I. Lobster Corp.*, 549 F. Supp. 3d 356, 359 (S.D.N.Y. 2021). Although decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification. *Id.*

### Discussion

Plaintiff argues that disqualification is required because Defendant HSBC "is incentivized to lay blame on individual branch managers [including Ms. Vogel] to mitigate potential liability and defeat class treatment." In particular, Plaintiff argues that branch manages are potential

*Carter* factor employers, who are subject to personal liability under the FLSA and NYLL. *See Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984). Therefore, Plaintiff contends, "Ms. Vogel [could] have potential liability to Plaintiff NI [and] HSBC could sue their former manager, Ms. Vogel, for contribution and to defray HSBC's own costs." (Mot. at 4.)

As a preliminary mater, claims for contribution are prohibited under this Circuit's interpretation of the FLSA and the NYLL. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999)("There is no right of contribution or indemnification for employers found liable under the FLSA.") This is true even if the employee from whom contribution is sought, in this case Ms. Vogel, "had responsibilities that would otherwise fit the statutory definition of an employer." *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 277 (E.D.N.Y. 2013)("*Herman* decides the contribution/indemnification issue in the context of a federal FLSA claim. . . the same reasoning bars such claims under the New York Labor Law.") Therefore, it is unlikely if HSBC could recover anything from Ms. Vogel under the FLSA even if she was considered an employer after application of the *Carter* factors.

Further, it is highly unlikely, if not impossible, for either party to add Ms. Vogel as a defendant or third-party defendant at this stage of the litigation. Fact discovery as to Plaintiff Ni's claims was due to close on the day Ms. Vogel's deposition was scheduled, March 27, 2024. That is nearly a year after the May 31, 2023 deadline for the parties to amend the pleadings and join parties. *See* ECF No. 21. If Plaintiff sought to add Ms. Vogel as a Defendant, she would need to make a showing of good cause. *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014). In order to show good cause, Plaintiff would need to "demonstrate diligence…

5

such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *Id.* It would stretch credulity for Plaintiff to argue she was not aware that Ms. Vogel, her own manager, was a potential party in this matter before the deadline for fact discovery on her claims had expired.

When, as here, the Plaintiff has not previously manifested any interest in suing a non-party as their employer, the conflict is potential rather than actual. *See Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 155–56 (S.D.N.Y. 2017). Further, it is unclear if "a competent and zealous attorney representing the current plaintiffs *would* or *should* pursue claims" against Ms. Vogel since she "may not have the personal financial resources to satisfy a judgment." *Id.* (citing Rule of Professional Conduct ("RPC") 1.7 cmt. [8] (N.Y. State Bar Ass'n 2009) (where a conflict "foreclose [s] alternatives that would otherwise be available" to a client, the critical questions include whether those alternatives "reasonably should be pursued on behalf of the client.")) The fact that Plaintiff has so far failed to bring an action against Ms. Vogel directly, "while not dispositive, also militate against the conclusion that suing [her] is an alternative that 'reasonably should be pursued' on behalf of the present plaintiffs." *Id.*

Even if there was a potential conflict between HSBC and Ms. Vogel, that conflict could be waivable, pursuant to RPC 1.7(b), so long as Morgan Lewis reasonably believes that it can provide competent and diligent representation to both clients and "each affected client gives informed consent, confirmed in writing." While it is not clear from the record whether Ms. Vogel already offered such consent through the terms of her engagement letter, several Courts in this district have allowed counsel to provide proof of consent from a subsequent client

following a motion for disqualification. *See Muniz*, 230 F. Supp. 3d at 158 (ordering counsel to advise the Court if it has obtained consent a month after the ruling); *Mercado v. City of New York*, 2010 WL 3910594, at *8 (S.D.N.Y. Sept. 30, 2010)(offering parties an opportunity to submit affidavits following opinion which indicate they waive personal defenses). It is also notable that the representation of Ms. Vogel, a witness and not a party, is limited to representation at her deposition. Thus, the potential for conflict is remote.

Plaintiff cites to *Canfield v. SS&C Techs. Holdings, Inc.*, for the proposition that consent needs to be obtained "prior to Counsel's undertaking representation of adverse interests." 2020 WL 3960929, at *4 (S.D.N.Y. July 10, 2020)(citing *Anderson v. Nassau Cty. Dept. of Corrections*, 376 F. Supp. 2d 294, 299–300 (E.D.N.Y. 2005) (*citing* Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc., 200 F.Supp.2d 355, 360 (S.D.N.Y. 2002). However, as that nesting-doll of citation suggests, the underlying proposition is more complicated than Plaintiff claims. In *Discotrade*, a pre-existing client denied ever granting an oral waiver to the conflicted counsel. 200 F. Supp. 2d at 359. *Anderson*, citing *Discotech*, notes the issue in both cases was that prior consent must be obtained from *the current client* before undertaking an adverse representation. *See Anderson*, 376 F. Supp. 2d 294, 300 (E.D.N.Y. 2005). While Defendants have not indicated whether HSBC consented to concurrent representation of Ms. Vogel, their opposition to this motion suggests that they have in fact, consented.

As for impleader of Ms. Vogel as a third-party defendant, HSBC has represented in its briefing that "HSBC has not and will not implead Ms. Vogel into the present Action or seek contribution from her." (ECF No. 233, Opposition to the Motion, ("Opp.") at 7.) Plaintiff

contends that this is merely a "non-binding promise for future conduct" that does not prevent HSBC from impleading Ms. Vogel at a later date. But, as noted above, there is a legal obstacle to impleading Ms. Vogel — HSBC cannot seek contribution from her. Further and in any event, it is well past the deadline for impleader. Fed. R. Civ. P. 14(a).

The cases cited by Plaintiff are unpersuasive, and in at least one instance, counsel against granting the motion. Plaintiff cites to dicta in *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, for the proposition that ""a lawyer who represents a nonparty witness in litigation in which he represents a party runs the risk that the testimony of one client may contradict the testimony of the other client." Case No. 4:03CV00733 JLH., at *7 (E.D. Ark. May. 4, 2009); (Mot. at 8.) However, the Court in *Mid-State* actually *denied* the motion for disqualification since there was no actual conflict between the non-party witness and the Defendant. *Mid-State Aftermarket Body Parts, Inc.,* Case No. 4:03CV00733 JLH., at *6. In fact, the opinion collected cases holding that similar dual-representations are permissible absent an actual conflict of interest. *Id* at *5-6. Thus, this case does not assist Plaintiff.

Plaintiff's counsel also cites a case where he was himself disqualified from representing a client due to what he characterizes as a "far less serious" conflict than the hypothetical one at issue here. Mot. At 8, citing *See Rangel v. 38 MacDougal LLC,* Case No: 24-cv-00434 (JGLC), Dkt 7,15-16, 23 (S.D.N.Y. 2024). The Court does not agree with Plaintiff's assessment of the relative "seriousness" of the conflicts at issue in *Rangel* and the potential conflict at issue here. In *Rangel,* Plaintiff's counsel filed a complaint in which one of Plaintiff's counsel's current clients accused two other of his current clients of engaging in wrongdoing. (Opp. at 11); *Rangel,* Case

8

No: 24-cv-00434 (JGLC), Dkt 22 (S.D.N.Y. 2024).  *Rangel* was therefore a straightforward case of an actual conflict between an existing client and a new client — the new client explicitly asserted legal claims against the existing client.  Such a conflict should have been identified through a conflicts check before Plaintiff's counsel agreed to the subsequent representation in the first place.  Thus *Rangel* has no bearing on the analysis here.

In short, Plaintiff has failed to meet the "high standard of proof" that disqualification is required here.  *George v. City of Buffalo*, 789 F. Supp. 2d 417, 435 (W.D.N.Y.  2011) (denying motion to disqualify where "Plaintiff's disqualification motion [is] at least colorable" noting " "mere speculation will not suffice.")  The present arrangement where Morgan Lewis represents both HSBC and its former employee/branch manager, Ms. Vogel, merely for the purposes of her deposition, is not at all unusual and does not raise concerns that require disqualification based on the facts presented.  *Rivera v. Lettire Constr. Corp.*, 2022 WL 2718999, at *1 (S.D.N.Y. June 9, 2022).

Since I conclude that the joint representation is proper, I similarly conclude that no sanctions are warranted.  While Plaintiff claims that Defendants have acted in bad faith in not assisting Plaintiff in obtaining Ms. Vogel's deposition sooner, I have supervised discovery in this matter and Defendants have complied with every deposition-related order issued by the undersigned.  *See e.g.,* ECF No. 132.  Plaintiff has offered no evidence Defendants lied when they claimed they were not able to reach Ms. Vogel until she was subpoenaed by the Plaintiff.  Finally, it was Plaintiff who chose to cancel the scheduled deposition of Ms. Vogel, bring the present motion, and further extend discovery in this case.

9

## Conclusion

For the reasons stated above, Plaintiff's motion to disqualify and for sanctions is DENIED in its entirety. A revised schedule for discovery in Plaintiff Ni's individual claim will be set at the August 16, 2024 conference. **The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 209.**

**SO ORDERED.**

DATED:   New York, New York
             August 12, 2024

_____
KATHARINE H. PARKER
United States Magistrate Judge