**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KELLY NI, *on behalf of herself, FLSA*
*Collective Plaintiffs, and the Class,*

         Plaintiff,

    v.

HSBC BANK USA, N.A.,

         Defendant.

Case No.:  23-cv-00309


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CERTIFICATION OF A RULE 23 CLASS**


LEE LITIGATION GROUP, PLLC
C. K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

## TABLE OF CONTENTS

EXHIBITS ......................................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................................1

II.     PLAINTIFFS' STATE LAW CLASS CLAIMS .........................................................2

      i.      Defendant Compelled Class Members to Perform Uncompensated Work Outside of Their Fixed Working Schedules ......................................................... 3

      ii.     Defendant's Failure to Pay Class Members for Short Rest Breaks ..................... 11

      iii.    Defendant Employed Common Management and Pay Policies in all States........ 16

      iv.     Failure to Provide Wage Statements and Notices ................................................ 17

III.    THE PROPOSED CLASS IS APPROPRIATE ..........................................................21

      i.      Plaintiffs' State Law Claims Satisfy All Requirements of Rule 23 ..................... 21

      ii.     The Proposed Class Is Identifiable and Ascertainable.......................................... 23

      iii.    The Class Is So Numerous that Joinder Is Impracticable .................................... 24

      iv.     Commonality and Typicality Requirements Are Met............................................ 24

      v.      Plaintiffs Will Adequately Represent the Class.................................................... 26

      vi.     Common Questions of Law and Fact Predominate ............................................... 28

      vii.    Class Treatment Is Superior to Other Alternatives .............................................. 29

      viii.   Plaintiffs' Counsel Should Be Appointed as Class Counsel................................. 30

IV.     CONCLUSION...........................................................................................................31

**EXHIBITS**

(The Declaration of C.K. Lee Submitted in Support of Class Certification Attests to the Accuracy of the Below Exhibits)

| | |
|---|---|
| **Exhibit A** | Plaintiff's' Proposed Notice to Class Members |
| **Exhibit B** | List of HSBC Branch Locations Provided by Defendants |
| **Exhibit C** | Schedule of State Wage Reg. and Case Laws Demonstrating their Mirroring of the FLSA |
| **Exhibit D** | Summary of Relevant Testimony from Mr. Cichos's Deposition and the Transcripts of his Deposition Testimony |
| **Exhibit E** | HSBC's US Overtime Policy Produced by Plaintiff |
| **Exhibit G** | Plaintiff NI's Pay Records |
| **Exhibit I** | Defendant's Handbook |
| **Exhibit K** | Plaintiff NI Timesheets Showing Violations on the Following: October 16, 2019, January 8, 2020, January 24, 2020, August 5, 2020, and August 18, 2020 |
| **Exhibit L** | Excerpts from Defendant's 10-K filing made with the S.E.C. |
| **Exhibit M** | Summary of Relevant Testimony from Plaintiff NI's Deposition and the Transcripts of her Deposition Testimony |
| **Exhibit N** | Transcripts of Jeffrey P. Needham's Deposition Testimony |
| **Exhibit O** | Lee Litigation Group, PLLC Class Case List |

(The Declaration of Shane Leible Submitted in Support of Class Certification Attests to the Accuracy of the Below Exhibits)

| | |
|---|---|
| **Exhibit F** | Consolidation of Pay Records Produced by Defendant |
| **Exhibit H** | Consolidation of Email and Time Records Produced by Defendant |
| **Exhibit J** | List of Employees, Dates, and Durations of 20-Minute Violations |

# TABLE OF AUTHORITIES

## CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)..........................26

*Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 F. App'x 784 (9th Cir. 2012)..................................2

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)...............................25

*Bueno v. Buzinover*, 2023 U.S. Dist. LEXIS 38154 (S.D.N.Y. Mar. 7, 2023) ............................18

*Calderon v. Witvoet*, 999 F.2d 1101 (7th Cir. 1993) ................................................................21

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ....................................25

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ..................................................................22

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) .....................................24

*Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543 (N.D. Ill. July 8, 2011).............20

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)...............................25, 27, 28

*Del Rio v. Amazon.com Servs.*, 693 F. Supp. 3d 301 (D. Conn. 2023) .......................................2

*Donovan v. Bel-Loc Diner,* 780 F.2d 1113 (4th Cir. 1985).......................................................14

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011).........................................14, 23

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012)..........................................................27

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011) ..... 25, 28, 30

*Garrido v. House of Salads One LLC*, 2022 U.S. Dist. LEXIS 58496 (E.D.N.Y. Mar. 30, 2022) ..
................................................................................................................................................. 2

*GE Chun Wen v. Hair Party 24 Hours Inc.*, 2021 U.S. Dist. LEXIS 97828 (S.D.N.Y. 2021) .... 14

*Gonzalez v. Nicholas Zito Racing Stable, Inc.*, 2008 U.S. Dist. LEXIS 27598 (E.D.N.Y. Mar. 31,
2008) ...................................................................................................................................... 29

*Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010)...............23

*Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008).........................28

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)............................27

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).........................29, 30

*Imbarrato v. Banta Mgmt. Servs. Inc.*, , 2020 U.S. Dist. LEXIS 49740 (S.D.N.Y. Mar. 20, 2020)
................................................................................................................................................18

*In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008).....................................22

*In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ..........................................22

*Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014) ........................................................ 2

*Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. 2006).........22

*Kowalski v. YellowPages. com, LLC*, 2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012)................22

*Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343 (E.D.N.Y. 2009) ...............................................27

*Lipstein v. 20X Hosp. LLC*, 2023 U.S. Dist. LEXIS 167615 (S.D.N.Y. Sep. 19, 2023) ............. 18

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242 (2d Cir. 2011)
................................................................................................................................................27

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992) .............................................21

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ..................................................22, 24, 25

*Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007 (S.D.N.Y. Jan. 5, 2012) ...................14

*Martinez v. Ayken, Inc.*, 2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016).........25, 27, 29

*Martinez v. Finger Mgmt. Corp*2024 WL 2114330 (S.D.N.Y. May 10, 2024)....................18, 30

*McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187 (N.D. Cal. March 19, 2001)......20

*Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12,
2008) ......................................................................................................................................28

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007)............................................. 29
*Mills v. Mills*, 2021 Minn. Dist. LEXIS 200 (Minn. Dist. Ct., Anoka County, Tenth Judicial District
    May 20, 2021)............................................................................................................................ 19
*Moore v. Painewebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002)........................................................ 28
*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 28
*Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y. 2013) .................... 23
*Naylor v. Securiguard, Inc.*, 801 F.3d 501 (5th Cir 2015)........................................................... 14
*Niemiec v. Ann Bendick Realty*, 2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar. 30, 2007)......... 23
*Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)........................................ 29
*Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sep. 16, 2014) ................ 30
*Poplawski v. Metroplex on the Atl., LLC*, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012)
    ..................................................................................................................................................... 29
*Rosario v. Valentine Ave. Disc. Store, Co.*, 2013 U.S. Dist. LEXIS 77183 (E.D.N.Y. May 31, 2013)
    ..................................................................................................................................................... 28
*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .................................................. 28
*Rother v. Lupenko*, 2011 U.S. Dist. LEXIS 36135 (D. Or. 2011) ............................................... 15
*Rother v. Lupenko*, 515 F. App'x 672 (9th Cir. 2013) .................................................... 14, 15, 16
*Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420 (3d Cir. 2017)........................... 11, 14
*Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808 (S.D.N.Y Jan 5, 2012) ............. 14
*Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013)... 23
*Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54 (E.D.N.Y. 2014) ....... 23
*T.F. v. N.F.*, 820 N.Y.S.2d 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ..................................... 20
*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914
    (S.D.N.Y. 2007)........................................................................................................................ 28
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................... 24, 25
*Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d
    124 (2d Cir. 2001)..................................................................................................................... 27
*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............................ 30

## STATUTES

42 U.S.C. § 413................................................................................................................................ 20
Cal. Lab. Code § 226(a).................................................................................................................. 18
Cal. Lab. Code § 510(a).................................................................................................................... 2
Cal. Lab. Code § 515(d).................................................................................................................... 2
New York Lab. Law § 195 ............................................................................................................... 18

## OTHER AUTHORITIES

Social Security Administration, Handbook § 1400 (1997).............................................................. 20
U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1996
    DOLWH LEXIS 39, 1996 LW 1005233 (Dec. 2, 1996).......................................................... 13
U.S. DOL Operations Handbook, Ch. 31a01(a) (Aug. 10, 2016)................................................... 11

## RULES

Fed R. Civ. P 23(g) ........................................................................................................................ 30
Fed. R. Civ. P. 23........................................................................................................................ passim
Fed. R. Civ. P. 23(a) ................................................................................................................... passim

Fed. R. Civ. P. 23(b) ........................................................................................................... 21
Fed. R. Civ. P. 23(b)(3) ........................................................................................... 22, 28, 29

**REGULATIONS**

29 C.F.R. § 785.16 ......................................................................................................... 11, 15
29 C.F.R. § 785.18 ............................................................................................... 11, 12, 13, 14
29 C.F.R. § 785.19 ................................................................................................................ 14
29 C.F.R. § 785.47 ................................................................................................................ 15

## I.    PRELIMINARY STATEMENT

On January 13, 2023, Plaintiff Kelly Ni ("Plaintiff NI) filed a Class and Collective Action Complaint against Defendant HSBC Bank USA, N.A. ("HSBC" or "Defendant") alleging that Defendant failed to pay Plaintiff NI and other similarly situated employees for all wages owed. Plaintiff and Opt-in Plaintiffs Namrata Rastogi and Raymond Gordon Brown (collectively, "Plaintiffs") bring this motion to certify a Fed. R. Civ. P. ("FRCP") 23 class of all Personal Bankers employed by Defendant in the United States from January 13, 2017 (or a later date based on the statutes of limitations of the various States), until the date of certification ("Class Members"). Plaintiffs set forth their requested relief in the Proposed Order attached to the Notice of Motion. Plaintiffs' Proposed Notice to Class Members is attached as **Exhibit A**.

This case was conditionally certified on January 29, 2024, and notices were mailed to six-hundred-and-five (605) prospective opt-ins on March 5, 2024.  Since then, 80 individuals have filed consents to join the conditionally certified collective.

As is detailed below, class certification must be granted in this matter as the email and time records produced by Defendant reveal that 96% of the sampled Class conducted off-the-clock, uncompensated work.  Based on the class sampling of discovery that Defendant was compelled to produce, 96% of the sampled class (which covered employees from the various States) were found to have worked (i.e., sent work related emails) outside of their punch-in/out records.  The sampling of records reveals that over 42% of Class Members' emails, or 20,948 messages, were sent by Class Members after they were clocked-out.  While Plaintiffs append supporting declarations and other substantiating evidence to this motion, the sheer volume of written records demonstrating off-the-clock work, without compensation, proves Defendant's total failure to accurately track and

properly compensate Class Members for their hours worked.  This demonstration of systemic failure alone compels the certification of a Rule 23 class.

## II.    PLAINTIFFS' STATE LAW CLASS CLAIMS

Defendant operated branch locations employing Personal Bankers throughout the United States as follows:

|   |   |   |   |
|---|---|---|---|
| i. | New York – 145 Locations | vi. | Virginia – 6 Locations |
| ii. | California – 43 Locations | vii. | Maryland – 4 Locations |
| iii. | Florida – 12 Locations | viii. | Connecticut – 3 Locations |
| iv. | Washington State – 8 Locations | ix. | Washington D.C. – 3 Locations |
| v. | New Jersey – 8 Locations | x. | Pennsylvania – 2 Locations |

*See* **Exhibit B** (List of Locations Provided by Defendants).

The local and State laws ("State Wage Laws") mirror the requirements of the FLSA. *See* **Exhibit C** (Schedule of State Wage Regulations and Case Laws Mirroring the FLSA). "Defendants also failed to pay required overtime wages under the NYLL, which 'mirrors the FLSA in compensation provisions regarding . . . overtime' as a 'state analogue' to the FLSA." *Garrido v. House of Salads One LLC*, 2022 U.S. Dist. LEXIS 58496, at *15 (E.D.N.Y. Mar. 30, 2022); *see, e.g., Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 F. App'x 784, 787 (9th Cir. 2012) ("California law likewise [referencing the FLSA] requires that any work in excess of forty hours in a workweek be compensated at one and one-half times the employee's regular rate of pay. Cal. Lab. Code § 510(a).") (citing California Labor Code § 515(d)); *Del Rio v. Amazon.com Servs.*, 693 F. Supp. 3d 301, 309 (D. Conn. 2023) ("[T]he Connecticut Supreme and Appellate Courts have consistently held that Connecticut's overtime laws are coextensive with federal overtime laws, thus supporting a legislative intent to incorporate the PTPA and the ability of this Court to consider the Supreme Court's decision in *Integrity Staffing* as persuasive authority.").

In violation of these State wage laws, which all mirror or adopt the FLSA's overtime requirements, Defendant deprived Class Members of rightful overtime wages in the following ways:

     i.    Defendant compelled Class Members to perform uncompensated work outside of their scheduled shifts, including uncompensated work performed during meal breaks.

     ii.   Defendant failed to pay Class Members for short rest breaks of twenty minutes or less.

     iii.  For Class Members who worked in California and New York, Defendant failed to provide accurate earning statements and wage notices due to its failure to accurately calculate and compensate for all hours of work ("Wage Statement Subclass").

This motion is supported by unimpeachable documentary evidence, 25 supporting affidavits, and testimonial proof, demonstrating that Class Members were victims of a common scheme to underpay employees.

     i.    *Defendant Compelled Class Members to Perform Uncompensated Work Outside of Their Fixed Working Schedules*

HSBC knowingly and willfully violated State Wage Laws when it required all Class Members to self-report their scheduled work hours, rather than their actual work hours. This scheme operated to the detriment of all Class Members as follows:

**First**, Defendant's failure to compensate for all hours of work is made plain by Class Members' sampled time and email records.

In accordance with Court's February 29, 2024 Order, Defendant produced the following sampling:

"[T]he sample include data from 93 personal bankers, who worked across 53 different HSBC branches, covering the last three months of each year of the sampled individual's employment. This sample would represent about 15% of the personal bankers in the putative NYLL class, about 25% of the Defendant's branches, and about 25% of the total time period covered by the class for those individuals in the sample.

*See* ECF 134 at 2.  While the parties anticipated records for 93 personal bankers, Plaintiffs only received time and corresponding email records for 74 employees.  **An analysis of the 74 sampled employees' records reveals that approximately 43% of all emails *sent* by Class Members occurred when those employees were clocked-out!**  Further, the sampling of records indicates that at least **95.95% of Class Members** engaged in this unrecorded and uncompensated work. The below charts provide a summary of Plaintiffs' analysis of time and email records.

| Sampled employees with both time and email records | 74 | |
|---|---|---|
| Recorded shifts worked with at least 1 email sent | 6018 | |
| Breaks taken during these shifts | 5341 | |
| Breaks interrupted by sending email(s) | 936 | 17.52% |
| | | |
| **Total emails sent** | **49206** | |
| Total emails sent during breaks | 1555 | 2.71% |
| Total length of interrupted breaks for sampled employees | 667.06 Hours | |
| Total emails sent before shifts | 5668 | 11.52% |
| Total emails sent after shifts | 485 | 0.99% |
| Total emails sent on days off (no payment for these days) | 13240 | 26.91% |
| | | |
| **Total emails sent while clocked-out** | **20948** | **42.57%** |
| Average emails sent while clocked-out per person | 283.08 | |

| Sampled employees with both time and email records | 74 | |
|---|---|---|
| Number of employees who sent emails while clocked-out | 71 | 95.95% |
| Number of employees who sent emails before shifts | 44 | 59.46% |
| Number of employees who sent emails after shifts | 45 | 60.81% |

Leible Decl. at ¶ 2 *see also* **Exhibit H** (Consolidation of Email and Time Records Produced by Defendant). If there is any dispute regarding Plaintiffs' analysis, Plaintiffs can provide the underlying email and time records used to create **Exhibit H**.

Regardless of Defendant's requirement to only input scheduled hours (detailed below) and, even discounting all other supporting evidence, such as opt-in affidavits and deposition testimony of witnesses, the sheer quantity of documented work conducted by Class Members while clocked out (i.e., writing work related emails) proves Defendant's failure to pay for all hours worked.

**Second**, the documented failure to compensate for all work hours was effected by Defendant's unlawful policy which applied to all Class Members.

Defendant did not use independent, objective punch in/out clock machines at any of their branches. Instead, Defendant required all Class Members to manually enter their time into Defendant's system, rather than using a time-clock machine **Exhibit D** (Cichos Dep.) at 31:9-11. However, when entering their time, Defendant required all Class Members to input their scheduled hours and/or scheduled lunches despite Class Members working beyond these hours. This is proven by (i) the excessive off-the-clock work detailed above, (ii) Plaintiffs' 25 appended affidavits, which attest to being forced to self-report fewer hours than they worked, (iii) Defendant's overtime policy, and (iv) sampled employees' pay records, which demonstrate an impossible consistency in Class Members' recorded hours.

Plaintiffs append the affidavits of 25 Class Members, who all attest that Defendant's management, required Class Members to enter scheduled hours regardless of their actual hours of work:

- Pando Decl. at ¶ 2 ("I worked under two different managers. Manager Mary Gardner, who was my manager from around 2017 to 2018, and Manager Ron Volpe, who was my manager from around 2018 until the end of my employment. Under both managers, I received the same instructions: "Do not edit your timesheets." HSBC would pre-load timesheets reflecting each employee's weekly schedule into HSBC's time-keeping system. Employees were told not to edit these auto-generated timesheets and, if edited, to never allow the recorded time to go over 40 hours."
- Yip Decl. at ¶ 4 ("when entering my hours through the system, I was instructed to self-report my scheduled hours regardless of my actual worktime.");
- Dominguez at ¶ 1 ("My manager told me that we could not report extra hours outside of our shift unless we were approved by the upper management.");
- Rastogi Decl. at ¶ 5 ("I was required to report my scheduled hours regardless of my actual worktime. Management, including my manager Michelin LNU will tell us that we were not to work unauthorized overtime hours.");
- Parreno Decl. at ¶ 5 ("I was instructed to self-report my scheduled hours regardless of my actual worktime. This was required because any deviation from scheduled hours meant that

I was working overtime or more than my authorized hours, which could get us reprimanded.");

- Chen Decl. at ¶ 4 ("I was required to report that I began to work at 8:30 a. m. although I would arrive around 15 minutes before my shift. In addition, at the end of my shift I was instructed to self-report that my shift ended at 5:00 p.m. even if I exceed that time.");

- Megnath Decl. at ¶ 6 ("We were required by the managers to only self-report the scheduled times even if we arrived before the beginning of our shifts or stayed past the end of our scheduled hours, including working through lunch.);

- Bhasin Decl. at ¶ 3 ("When I reported my hours on the platform, I had to self-report my hours based on my scheduled shift even if it did not reflect my actual work hours…Employees knew that if we had reported hours beyond our shift, we would be severely reprimanded, receive poor performance reviews, or even terminated.");

- Uddin Decl. at ¶ 2 ("Because there was a policy which strongly discouraged us from reporting our overtime excess work, my managers at HSBC would routinely instruct me to work beyond my scheduled shift.");

- Ballon Decl. at ¶ 4 ("Despite my official work schedule, I was required to complete tasks at times beyond my shift. Our managers were aware that we were doing additional uncompensated work, because they prohibited us from reporting beyond our actual hours[.]");

- Wakayo Decl. at ¶ 20 ("There is no question that branch managers were aware of this discrepancy between hours worked and the hours for which we were compensated since they both enforced the prohibition on reporting overtime hours and organized Call Nights.");

- Kasper Decl. at ¶ 3 ("HSBC's time-tracking software would automatically generate a pre-filled timesheet with their employees' scheduled hours. HSBC's employees were prohibited from making any changes…").

- The following declarations match the above attestations regarding Defendant's policy to not record time beyond an employee's schedule: Cooper-Robinson Decl. at ¶ 3; Hasbrook at ¶ 5; Mohammed Decl. at ¶¶ 8-9; Raza Decl. at ¶¶ 5-6; Jallow Decl. at ¶ 4; Chung Decl. at ¶ 6-7; Lam Decl. ¶ 5; Makarious Decl. ¶¶ 2-3; Li Decl. at ¶ 1; D'Rozario at ¶¶ 3-4; Walker Decl. at ¶ 4; Ni Decl. [ECF 77] at ¶ 4-7; Gordon-Brown Decl. [ECF 78] at ¶¶ 4-5.

The deposition testimony of Plaintiff NI also affirms the testimony of the other 24 affiants.

*See* **Exhibit M** (Summary of Plaintiff NI's Dep. Testimony and the Dep. Transcripts).

Further, Defendant's written overtime policy corroborates the above testimony and demonstrates that HSBC strongly discourages overtime, which must be authorized in advance and only under exceptional circumstances. HSBC's US Overtime Policy provides that "[n]on-exempt employees are expected to work their regularly scheduled hours" but that "from time to time,

managers may require that non-exempt employees work beyond their regular work schedules." **Exhibit E** (Defendant's Overtime Policy) at 2. Thus, HSBC's policies contemplate that the process of authorizing overtime will typically be initiated by supervisors, not employees. The US Overtime Policy does provide that employees can "obtain approval from their manager prior to working overtime," but this is only "[i]f an employee cannot complete all of their daily work in the time allocated or the work hours provided." **Exhibit E** at 3. Thus, the policy does not envision employees seeking out approval in situations where the cause of the needed overtime work is something other than the inability to complete some preassigned set of daily tasks in eight hours.

The requirement to record only scheduled work hours and the structure of Defendant's overtime policy is reflected in the impossibly smooth and robotically consistent, time entries found in Class Members' records. The unnatural consistency corroborates the attestation of employees that they were forced to input their scheduled 8-hour days regardless of actual hours worked.

| Total paystubs in sampling | 7437 | |
|---|---|---|
| PAYSTUBS REFLECTING AN EXACT 8 HOUR SCHEDULE | | |
| Number of paystubs @ 80.00 hours | 1451 | 19.51% |
| Number of paystubs @ 72.00 hours | 606 | 8.15% |
| Number of paystubs @ 64.00 hours | 395 | 5.31% |
| Number of paystubs @ 56.00 hours | 161 | 2.16% |
| Number of paystubs @ 48.00 hours | 104 | 1.40% |
| Number of paystubs @ 40.00 hours | 262 | 3.52% |
| Number of paystubs @ 32.00 hours | 95 | 1.28% |
| Number of paystubs @ 24.00 hours | 30 | 0.40% |
| Number of paystubs @ 16.00 hours | 35 | 0.47% |
| Number of paystubs @ 8.00 hours | 13 | 0.17% |
| **Total** | **3152** | **42.38%** |

Leible Decl. at ¶ 2; *see also* **Exhibit F** (Consolidation of Pay Records Produced by Defendant). If there is any dispute regarding Plaintiffs' analysis, Plaintiffs can provide the underlying pay records used to create **Exhibit F**.

The rounded time entries consistently seen in the records of employees who worked across HSBC branches, clearly show a common policy set by Defendant, requiring Class Members to record only rounded 8-hour workdays.  The percentage (more than 42%) of paystubs, matching Class Members' 8-hour work schedule exactly regardless of location of work, demonstrates a common policy.  Despite Defendant's regulations, which require that employees record accurate their hours of work to the minute (*see* ECF 75-7), the fact that HSBC across the entire United States has robotically entered 8-hour workdays for almost 50% of its paystubs demonstrates a severe common violation.

As an example, Plaintiff NI submits a sampling of 14 *consecutive* wage statements each covering a 2-week pay period.  12 of these report Plaintiff NI as having worked *exactly* 80 hours to the minute. The only negligible deviations from this pattern in the sampling were two pay periods when Plaintiff NI is recorded as having worked 80.01 hours and 80.07 hours. *See* **Exhibit G**; Ni Decl. [ECF 77] at ¶ 38.

Mr. Cichos conceded at his deposition that the kind of unnatural consistency in Plaintiff NI's wage statements warranted scrutiny:

> **Q**. Okay. Again, this is from Ms. Ni for the next pay stub, the pay period ending August 9, 2020. Do you see that she's getting paid, yet again, for the third time, 80 hours that week -- that pay period?
>
> **A**. Yes, I see that.
>
> **Q**. Okay. When you see somebody with three consecutive pay stubs with the identical amount of hours worked, which coincidently are her scheduled hours, would you be concerned that she was not getting paid to the minute for all of her hours worked?
>
> **A**. I would complete a thorough investigation. I would review all of the information.

**Exhibit D** (Cichos Dep.) at 116:6-21.  This robotic consistency is particularly suggestive as Defendant claims its policy demands Class Members input their hours to the minute. *see id.* at 50:16-51:15; 76:1-4

Further, Mr. Cichos tendered this response after being presented with *only 3* consecutive bi-weekly wage statements, covering just 6 weeks of work.  As demonstrated above, thousands of paystubs, approximately 42% of all pay records, which represents thousands of weeks of work, were entered by Class Members with the same impossible, automated consistency for 8-hours each day.  The common practice and policy is demonstrated through the affidavits and the records themselves.

While the enormity of documented work occurring outside of Class Members recorded hours must be sufficient to demonstrate Defendant's violation, the support of 25 affidavits appended to this motion makes the alleged common policy of off-the-clock work indisputable. This is particularly true given the consistent and specific statements regarding off-the-clock work each declarant attests to experiencing.

The Declarants commonly attest to being forced to appear prior to their permitted clock-in time to open the branch or engage in morning "huddles," wherein the agenda for the day was set. Cooper-Robinson Decl. at ¶ 4 ("The unpaid work started prior to 8:30 a.m. when employees appeared for our daily "Huddle." Every morning, 10-20 minutes before the start of our shifts, we would come in before business hours, open up and have a team meeting where we would discuss our targets and strategies for the day."); Hasbrook Decl. at ¶ 12 ("Every morning, HSBC required me come to work about 15 minutes before the scheduled start of my shifts…"); Pando Decl. at ¶ 5 ("we were actually required to show up 20-30 minutes earlier than the bank's opening for "Team Huddles." On a daily basis, we would appear early to prep the bank for opening and to discuss

what business was scheduled to be done…"); Kasper Decl. at ¶ 6; Wakayo Decl. at ¶ 5; Li Decl. at ¶ 4; Walker Decl. at ¶ 4; Dominguez at ¶ 4; Yip Decl. at ¶ 4; Ballon Decl. at ¶ 6; Rastogi Decl. at ¶ 11; Chen Decl. at ¶ 4; Megnath Decl. at ¶ 10; Bhasin Decl. at ¶ 4; Uddin Decl. at ¶ 7.

The Declarants commonly attest to being forced to work through lunch despite being required to clock-out for thirty minutes or an hour, and make similar statements regarding the types of work required during lunch.  Yip Decl. at ¶ 6; Rastogi Decl. at ¶ 10; Parreno Decl. at 1; Chen Decl. at ¶ 6; Megnath Decl. at ¶¶ 13-14; Dominguez at ¶¶ 2-3, 7, Bhasin Decl. at ¶ 5; Uddin Decl. at ¶ 5; Ballon Decl. at ¶ 6; Wakayo Decl. at ¶¶ 5, 13; Kasper Decl. at ¶¶ 5, 8 ; Hasbrook at ¶¶ 16-20; Cooper-Robinson Decl. at ¶ 5; Hasbrook at ¶ 12; Pando Decl. at ¶ 6; Mohammed Decl. at ¶¶ 12-15; Raza Decl. at ¶ 9; Jallow Decl. at ¶ 9; Chung Decl. at ¶¶ 8, 14-15; Lam Decl. ¶¶ 7-8; Makarious Decl. ¶¶ 4, 6; Walker Decl. at ¶¶ 6, 9; Li Decl. at ¶ 1; D'Rozario at ¶¶ 5-6; Gordon-Brown Decl. at ¶ 5; Ni Decl. [ECF 77] at ¶¶ 4-7.

Declarants commonly attest to working after their required clock-out time on general tasks daily, and they commonly describe "Call Nights" which resulted in further post-shift off-the-clock work.  Yip Decl. at ¶¶ 8-10; Rastogi Decl. at ¶¶ 8-12; Parreno Decl. at 2; Chen Decl. at ¶¶ 4 ,8; Megnath Decl. at ¶¶ 7-12; Dominguez at ¶¶ 5-7, Bhasin Decl. at ¶¶ 6-7; Uddin Decl. at ¶¶ 3-4; Ballon Decl. at ¶¶ 4, 7; Wakayo Decl. at ¶¶ 8-12, 15; Kasper Decl. at ¶¶ 9-12; Hasbrook at ¶¶ 5-9, 22-30; Cooper-Robinson Decl. at ¶ 7-10; Pando Decl. at ¶¶ 7-14; Mohammed Decl. at ¶¶ 16-28; Raza Decl. at ¶¶ 7-8, 11-12; Jallow Decl. at ¶¶ 5-8; Chung Decl. at ¶¶ 11-13; Lam Decl. ¶¶ 9-15; Makarious Decl. ¶¶ 7-19, 6; Walker Decl. at ¶¶ 5-8; Li Decl. at ¶ 2-5; D'Rozario at ¶¶ 6-8; Gordon-Brown Decl. [ECF 78] at ¶¶ 11-18; Ni Decl. [ECF 77] at ¶¶ 25.

In accordance with the supporting testimony and clearly documented violations found in Defendant's records, Defendant engaged in a consistent pattern of failing to track and compensate

for all hours that Class Members worked.  Due to this common violation, class certification pursuant to FRCP 23 must be granted.

>    ii.    _Defendant's Failure to Pay Class Members for Short Rest Breaks_

As detailed above, State Wage Laws mirror or are co-extensive with the FLSA.  The FLSA treats breaks of 20 minutes or less as too short to permit an employee to become free of work obligations and, therefore, they must be compensated.  Defendant violated State Wage Laws when it failed to compensate these short-breaks.

Section 29 C.F.R. § 785.16 provides that: "Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked.  Conversely, Section 29 C.F.R. § 785.18 states that "[r]est periods of short duration, running from 5 minutes to about 20 minutes, are common in industry . . . . They **must** be counted as hours worked."  This statement that is reflected again in the U.S. DOL Operations Handbook, which states: "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked." U.S. DOL Operations Handbook, Ch. 31a01(a) (Aug. 10, 2016).

Although Section 785.16 provides general guidance regarding the compensability of hours worked, Section 785.18 sets forth a separate and more specific regulation carving out the compensability of breaks that are twenty minutes or less. As the Third Circuit Court of Appeals has held: "The Department of Labor has therefore determined as a matter of labor policy and practical consideration that breaks of twenty minutes or less are insufficient to allow for anything other than the kind of activity (or inactivity) that, by definition, primarily benefits the employer." _Sec'y United States DOL v. Am. Future Sys._, 873 F.3d 420, 429-30 (3d Cir. 2017).

Such an interpretation is certainly true here where the break intervals range from a single minute to the full 20-minutes contemplated by the Department of Labor. Moreover, that these breaks of 20-minutes or less went uncompensated is confirmed by the records and Defendant's own witness.

Here, the short rest breaks taken by employees were certainly authorized, as Defendant's handbook provides that "Non-exempt employees may be entitled to one 15-minute rest period or break for every four hours of work to be scheduled by their managers." **Exhibit I** (Defendant's Handbook). Since HSBC's Personal Bankers were typically scheduled to work eight-hour shifts, it follows that they were entitled to two such breaks each day. However, these short rest breaks were not always compensated.

That these authorized breaks went uncompensated is confirmed by the records and Defendant's own witness. For the 74 sampled Class Members for whom we have received time and email records, 23 of these individuals (or 31%) reveal at least one violation 29 C.F.R. § 758.18. *See* **Exhibit J** (List of Employees, Dates, and Durations of 20-Minute Violations). This same violation was also experienced by Plaintiff NI, whose declaration and timesheets demonstrate the lack of payment. **Exhibit K** (Plaintiff NI Timesheets Showing Violations on the Following: October 16, 2019, January 8, 2020, January 24, 2020, August 5, 2020, and August 18, 2020); Ni Decl. [ECF 77] at ¶ 36. Declarant Gordon-Brown also attests that he would take short rest breaks of under twenty minutes for which he was never compensated and that other employees were likewise subject to this policy. Gordon-Brown Decl. [ECF 78] at ¶ 18.

More than the documents and confirming attestations, Defendant's 30(b)(6) Representative admits the reported breaks of 20 minutes or less are never compensated. *See* **Exhibit D** (Cichos Dep.) at 149:18-21 ("If an employee is clocked out for less than 20 minutes, we do not pay them.

We would not pay employees for time that they did not record in the system that they did not work.").

Defendant's failure to compensate for breaks lasting between 1 and 20 minutes is in violation of both the Code of Federal Regulations and case law, which mandate that breaks of 20 minutes or less be counted towards work hours.  29 C.F.R. § 785.18 (the regulation provides that "[t]hey *must* be counted as hours worked.") (emphasis added). In fact, it is the Department of Labor's longstanding position that § 785.18 imposes a bright-line rule (absent exceptional circumstances) based solely on the length of the breaks, without regard to how the breaks were spent, or could have been spent, by employees:

> Employees have always taken short work breaks, with pay, for a myriad of non-work purposes -- a visit to the bathroom, a drink of coffee, a call to check the children, attending to a medical necessity, a cigarette break, etc. *The Department has consistently held for over 45 years that such breaks are hours worked under the FLSA, without evaluating the relative merits of an employee's activities*. This position, found at 29 C.F.R. 785.18, is based squarely in the premise that short breaks are common in industry, promote the efficiency of employees and are customarily treated as work time by employers…While we fully appreciate the extraordinary difficulties presented to employers by smoking in the workplace, we believe that the government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. *We strongly believe that employers and employees are best served by the bright line time test currently provided in Section 785.18*….We are unwilling, for these reasons cited above, to modify the existing position. The FLSA does not require an employer to provide its employees with rest periods or breaks. If the employer decides to permit short breaks, however, the time is compensable hours worked. Even if the employees agree to forego compensation for the break time, the time is still compensable, because employees may not waive their statutory rights through an agreement with the employer…

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1996 DOLWH LEXIS 39, 1996 LW 1005233, at *1-3 (Dec. 2, 1996).

Thus, the question of whether employees were working, eating, smoking, or drinking coffee is *legally irrelevant*.  The exact character of employees' breaks might be relevant to the issue of whether breaks lasting *between 21 and 29 minutes* are compensable, given the language

of 29 C.F.R. § 785.19, but breaks that are 20 minutes or less are governed by 29 C.F.R. § 785.18, which sets forth a *bright-line rule*. *See Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017) ("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted)

The DOL's "bright line time test" has been upheld by numerous Circuit Courts, and by other district courts in this circuit. For example:

- *Naylor v. Securiguard, Inc.*, 801 F.3d 501, 504-05 (5th Cir 2015) ("The regulations thus make the duration of the break the key factor in whether it is classified as the shorter, compensable 'rest break' or the longer, noncompensable 'meal period.'")

- *Rother v. Lupenko*, 515 Fed. Appx. 672, 674-75 (9th Cir. 2013) ("It is the general rule under federal law that breaks of less than thirty minutes are compensable.")

- *Donovan v. Bel-Loc Diner,* 780 F.2d 1113, 1115 n.1 (4th Cir. 1985) (noting that "to qualify as a bono fide noncompensable break, the respite must be uninterrupted and at least thirty minutes in duration, and the employee must be completely relieved from duty")

- *Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808, at *30, 62 (S.D.N.Y Jan 5, 2012) (comparing § 785.18 (rest) with § 785.19 (meal) to explain why an employer might lie about the length of employee breaks: "unlike shorter breaks, an employer need not compensate employees for longer rest periods;" also citing § 785.18 to support the conclusion that compensable time "also includes work breaks approximately of 20 minutes or less in duration.")

- *GE Chun Wen v. Hair Party 24 Hours Inc.*, 2021 U.S. Dist. LEXIS 97828, *44 (S.D.N.Y. 2021) ("As Plaintiff has stated that his meal breaks were less than 20 minutes long, this Court will consider those breaks to be compensable as working hours for purposes of a damages calculation.")

- *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) (stating after quoting testimony that employees' meal breaks only lasted 10 minutes, "Rest periods of short duration must be counted as hours worked. *See* 29 C.F.R. § 785.18")

- *Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, *6 (S.D.N.Y. Jan. 5, 2012) ("the Court finds, *as a matter of law*, that breaks of less than twenty minutes are compensable") (emphasis added)

In short, breaks of 20 minutes or less ***must*** be compensated absent exceptional circumstances. Citing section 785.18, the Ninth Circuit commented that "it is the general rule under

federal law that breaks of less than thirty minutes are compensable." *Rother v. Lupenko*, 515 F. App'x 672, 674-75 (9th Cir. 2013). Based on a review of the current records it is clear that Defendant failed to compensate for these breaks.

However, the Court need not address the bright line test at the current stage in this matter. It is clear that a point exists between 1 and 20 minutes where the breaks must be evaluated as too short to be "long enough to enable [employees] to use the time effectively for [the employees] own purposes." 29 C.F.R. § 785.16. As Defendant's policy failed to compensate for **any** breaks lasting between 1 and 20 minutes, the Court at this stage does not need to determine whether it will apply the bright line rule for all breaks of 20 minutes and below. Regardless of whether the Court follows the bright-line test described above or devises a lower threshold for a determination of a per se violation, that there exists a per se violation for failing to compensate these short breaks cannot be disputed.

Finally, no argument may be advanced that a short, uncompensated break is a de minimis violation pursuant to the FLSA. The Fair Labor Standards Act only allows an employer to disregard de minimis periods from compensation when they fit the definition found in 29 C.F.R. § 785.47. De minimis time for purposes of failing to compensate is defined as "insubstantial or insignificant periods of time" that "cannot as a practical administrative matter be precisely recorded for payroll purposes." 29 C.F.R. § 785.47; see also *Rother v. Lupenko*, 2011 U.S. Dist. LEXIS 36135, *5 (D. Or. 2011) , *aff'd in part and rev'd in part on other grounds*, 515 F. App'x 672 (9th Cir. 2013). Pursuant to the regulation, a finding of a de minimis violation requires the presence of the following two elements: (i) insubstantial or insignificant periods of time **and** (ii) that such time cannot be practically recorded. As the *Rother* Court affirmed after jury trial, "the defendant's computerized timekeeping system actually did track minute-long breaks…The

defense's argument that a minute is insignificant fails because…[b]eing a short amount of time alone is not enough, it must also be impractical to record it." *Id*.  Here, like in *Rother,* the rest periods are clearly recorded in Defendant's time records.  Consequently, there can be no dispute that these short periods could be captured and compensated.

Due to Defendant's common policy and practice, Class Members suffered the same violation.  As employees all share this claim, a common issue of fact or law exists, and Plaintiffs' request for certification of a Rule 23 class must be granted.

iii.  *Defendant Employed Common Management and Pay Policies in all States*

The commonality between the records of Class Members, who worked at different locations, merely confirms what the testimony and handbook and policy documents already verified, HSBC maintains common uniform pay practices across the country.  This simply fact was confirmed by Defendant's own 30(b)(6) Representative:

**Q.** So is it true that the wage and hour policies for personal bankers and -- and tellers are the same throughout the country?

**A.** Thank you. The wage and hour -- internal wage and hour policies for HSBC apply to all personal bankers and all tellers, yes.

**Q.** And there's no reason to believe that any specific teller or personal banker would be made to suffer, you know, any unique violations specific only to themselves; is that accurate?

**A.** I'm not aware of anything, no.

**Exhibit D** (Cichos Dep.) at 42:12-22-43:1-6 (objections omitted).

Mr. Cichos also confirmed that "the onboarding documents [are] the same for all new tellers or bankers at HSBC," **Exhibit D** at 46:1-4, just as he confirmed that staff transferring to other locations, either permanently or just to fill in, "wouldn't need any additional training to do the work at the different branches." **Exhibit D** at 89:3-9. Mr. Cichos also noted that the format of employees' time records was the same throughout the country "for all bankers[.]" **Exhibit D** at

91:1-3. A summary of admissions from Mr. Cichos's testimony, proving HSBC's use of common management and wage policies for all Class Members, is attached to **Exhibit D**. Plaintiff NI's testimony also aligns with Mr. Cichos's admissions of common control *See* **Exhibit M**.

In addition, Defendant's 10K report, filed with the SEC, confirms that Defendant is a single integrated enterprise that applied common policies—both wage-related and otherwise—to all employees across all branches. Relevant excerpts from Defendant's 10K substantiating all the foregoing are attached as **Exhibit L**. The 10K states that "[we] review our pay practices internally and with independent third parties," so the suspicious consistency and the shocking number of emails (43% of all emails), which were sent when Class Members were clocked-out and unpaid, could not have been lost on HSBC's upper management. *Id*. at 1. The centralized nature of Defendant's human resources operations is also confirmed by the existence of "HSBC University," Defendant's "online learning portal and global network of training centers." *Id*. at 3. And it is further confirmed by Defendant's single standard of corporate governance, implemented throughout its branches through its "Statement of Business Principles and Code of Ethics." *Id*. at 5. Defendant is integrated in other respects, too, as it has a single consolidated balance sheet and is audited by a single accounting firm, PricewaterhouseCoopers LLP. *Id*. at 6-8.

The clearly documented uncompensated work being conducted by all Class Members, regardless of location of work, the centralized management, centralized training, and centralized policies, demonstrate that Defendant failed to keep accurate time records and failed to properly compensate all Class Members. The common control, management, and documented violation necessitates class treatment.

### iv. _Failure to Provide Wage Statements and Notices_

In light of the above class-wide failure to accurately track and pay Class Members for their hours, Defendant committed further violations against New York and California Class Members

by misreporting to these employees their hours of work. Both New York and California require employers to provide accurate information regarding employees' hours of work and pay. Both the Wage Theft Prevention Act ("WTPA") found in NYLL § 195 and California's Labor Code Section 226(a) were "enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Imbarrato v. Banta Mgmt. Servs. Inc.*, , 2020 U.S. Dist. LEXIS 49740, at *8 (S.D.N.Y. Mar. 20, 2020). The written notices mandated under the WTPA serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." 2020 U.S. Dist. LEXIS 49740, at *23-25. Providing inaccurate notice of hours and wages not only "impinge[s] on an employee's interests…in being paid what is owed, but also in being able to advocate for the receipt of proper pay." *Bueno v. Buzinover*, 2023 U.S. Dist. LEXIS 38154, at *5-7 (S.D.N.Y. Mar. 7, 2023).

Many courts in this District have found a violation of the above claims and a concrete injury by virtue of the inaccurate wage statements themselves without requiring a further showing. The reason for not requiring a further showing is that "Defendants' failure to provide accurate wage notices and statements hurt his ability to assess whether he was being properly paid and therefore impaired his ability to promptly raise issues of underpayment with Defendants." *Martinez v. Finger Mgmt. Corp.* 2024 WL 2114330, at *2 (S.D.N.Y. May 10, 2024); *see, e.g., Lipstein v. 20X Hosp. LLC*, 2023 U.S. Dist. LEXIS 167615, *25 (S.D.N.Y. Sep. 19, 2023) ("[H]e was monetarily harmed because he did not receive information about his rate of pay and accurate wage statements, as required by the statute, which hurt his ability to assess whether he was being properly paid and therefore promptly raise issues of underpayment with his employer. Plaintiff was therefore monetarily harmed by being deprived of his income for longer than he would have been had he been able to timely raise his underpayment earlier.").

18

It cannot be disputed that Class Members suffered by Defendant's failure to comply with New York and California mandates to accurately report employees' hours of work. Class Members would have been in a stronger legal position had they been in possession of accurate wage statements and notices, which is the entire purpose of the New York and California law. Had the wage statements accurately represented Plaintiffs' actual hours, which the above showing demonstrates they did not, the statements would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Class Members worked and the number of hours for which they were paid—thus providing incontrovertible *proof* of Defendant's violations. At best, Class Members might have avoided this litigation altogether, as such proof would incentivize Defendant to make employees whole. At worst, Class Members would have had the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendant themselves. Either way, Plaintiffs would have suffered the deprivation of their wages for a shorter span of time. Of course, the most likely outcome of accurately reporting employees' hours of work is that Defendant would have paid employees properly in the first instance. The misreporting of work hours was instrumental to deceiving employees, and ultimately, attempting to minimize or delay payments owed to Class Members.

In addition to all the foregoing, Class Members were injured by the WTPA and California Labo Code violations because the direct effect of understating the number of hours an employee worked is to reduce the wages that the employee is listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee's earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual

19

income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $133,086 as reflected on his final year paystub and W-2").

The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] …[and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997) )); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

This is yet another reason why Defendant's failure to provide Class Members with accurate wage statements entailed "concrete, downstream consequences." Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

## III.    THE PROPOSED CLASS IS APPROPRIATE

All Class Members, not just Plaintiffs, suffered unpaid, owed compensation.  There was nothing unique in Plaintiffs' hours or their work responsibilities.  In fact, Defendant's 30(b)(6) representative confirms that there would be no reason for **_any_** Class Member to suffer a unique violation only to themselves. **Exhibit D** (Cichos Dep.) at 42:19-43:6 ("**Q.** And there's no reason to believe that any specific teller or personal banker would be made to suffer, you know, any unique violations specific only to themselves; is that accurate? **A.** I'm not aware of anything, no.") (objection omitted).  As detailed above, all employees were subject to the same timekeeping procedure, policies, and all experienced the same violation.

It is inexcusable that all of Defendant's employees were deprived of the compensation that they rightly earned.  Thankfully, Plaintiffs and many Opt-in Plaintiffs have expressed a willingness to help rectify this unjust treatment by acting as Class representative.

### i.    *Plaintiffs' State Law Claims Satisfy All Requirements of Rule 23*

Rule 23 provides that a court should certify a class where, as here, plaintiffs satisfy each of the four conditions of Rule 23(a) as well as one of the three requirements of Rule 23(b). *See*

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ("A district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").

Specifically, under Rule 23(a), plaintiffs must demonstrate that:

(1)   the class is so numerous that joinder of all members is impracticable;
(2)   there are questions of law or fact common to the class;
(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)   the representative parties will fairly and adequately protect the interests of the class.

*See* FRCP 23(a). These requirements are generally referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, Rule 23(a) implicitly requires that class members be "identifiable and ascertainable." *See Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *4 (E.D.N.Y. 2006). Then, under Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3).

When considering whether the requirements of Rule 23 have been met, "a court may not address the merits of the action except to the extent that a merits issue overlaps with a Rule 23 requirement." *In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008) Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages. com, LLC*, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012)).

The requirements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt a standard of flexibility," *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997), and "are encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall purpose." *Niemiec v. Ann Bendick Realty*, 2007 U.S. Dist. LEXIS 98840, at *16 (E.D.N.Y. Mar.

30, 2007). In addition, "it is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (citation omitted).

Accordingly, courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014). Indeed, "[c]ourts in this Circuit have displayed a preference for granting rather than denying class certification." *Morris v. Alle Processing Corp.*, 2013 U.S. Dist. LEXIS 64534, at *15 (E.D.N.Y. 2013).

When taken together, the declarations, Defendant's documented violations, and the deposition testimonies demonstrate a non-compliance with the FLSA and, therefore, State Wage Laws, which supply more than enough factual support to satisfy all the requirements of Rule 23.

### ii.    *The Proposed Class Is Identifiable and Ascertainable*

A class is identifiable and ascertainable where "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357, at *95 (S.D.N.Y. Mar. 15, 2013). The standard "is not demanding" and the Court "need only be able to ascertain the general boundaries of the proposed class." *Gortat v. Capala Bros., Inc.*, 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010).

Plaintiffs unambiguously define "Class Members." *See supra* 1. Thus, there can be no uncertainty as to whether an individual does or does not fall within it. Class Members can easily be identified based on Defendant's employment records as both federal and State Wage Laws require the preservation of payroll records for each employee. *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 n.85 (S.D.N.Y. 2011) ("The class . . . is easily identified from [defendant's]

payroll records. Thus, the implied requirement of ascertainability is satisfied.") Thus, the proposed

class is identifiable and ascertainable.

### iii.     _The Class Is So Numerous that Joinder Is Impracticable_

Although there is no rigid numerical threshold for measuring the impracticability of

joinder, the Second Circuit has stated that "numerosity is presumed at a level of 40 members."

_Consol. Rail Corp. v. Town of Hyde Park_, 47 F.3d 473, 483 (2d Cir. 1995).  As Defendant's already

identified list for the conditionally certified collective already equals hundreds of employees, and

as the Rule 23 class sought under State Wage Laws is co-extensive, numerosity cannot be disputed.

### iv.     _Commonality and Typicality Requirements Are Met_

The commonality and typicality requirements "[b]oth serve as guideposts for determining

whether under the particular circumstances maintenance of a class action is economical and

whether the named plaintiff's claims and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence." _See Wal-Mart Stores,_

_Inc. v. Dukes_, 131 S. Ct. 2541, 2551 n. 5 (2011). "As a result, the commonality and typicality

requirements tend to merge into one another, and similar considerations animate the analysis" of

the two requirements. _Marisol A._, 126 F.3d at 376.

Commonality is met when there are "questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2). It requires that the claims of the proposed class "depend upon a common

contention" "that is capable of classwide resolution." _Dukes_, 131 S. Ct. at 2551. It "does not mean

that all issues must be identical as to each member, but it does require that plaintiffs identify some

unifying thread among the members' claims that warrant[s] class treatment." "[C]ourts have

liberally construed the commonality requirement to mandate a minimum of one issue common to

all class members." _Garcia v. Pancho Villa's of Huntington Vill., Inc._, 281 F.R.D. 100, 105

(E.D.N.Y. 2011) (emphasis added). *See Dukes*, 131 S. Ct. at 2556 ("**Even a single [common] question will do.**") (emphasis added).

Typicality requires that the claims of Plaintiffs are typical of the claims of the Class. *See* Fed. R. Civ. P. 23(a)(3). It is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. "As with commonality, typicality need not be complete." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 157 (S.D.N.Y. 2008). Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). *See Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.") (emphasis added).

As was shown above, Plaintiffs have more than enough evidence to demonstrate that "there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together." *Martinez v. Ayken, Inc.*, 2016 U.S. Dist. LEXIS 25556, at *28 (E.D.N.Y. Feb. 29, 2016). Plaintiffs briefly summarize that evidence below.

***(1) Failure to Compensate for Work Performed Outside Scheduled Work.*** As described above, Plaintiffs have provided incontrovertible proof that Class Members worked beyond their scheduled hours. Approximately 96% of sampled Class Members sent emails outside of clocked-in compensated hours. In fact, 43% of all emails sent by sampled Class Members were sent outside of their clocked-in times. That Defendant failed to accurately maintain time records of their employees is also demonstrated by Defendant's policy that all employees are to track their own time to the minute, (*see* **Exh. D** at 50:16-51:15; 76:1-4), yet almost half of all Class Members

pay records reveal Class Members input their 8-hour schedule exactly. Finally, the commonality is also demonstrated by the 25 affidavits appended to this motion, which all allege common off-the-clock work.

**(2) *Failure to Pay Wages Due a Failure to Compensate 20 Minute Breaks.*** Defendant's witnesses do not dispute that when Class Members enter a break of 20-minutes or less into their system, Defendant does not compensate this time, regardless of the reason for the break.  Of the 74 Class Members for whom we received records, this violation appeared for approximately 30% of them.  This violation existed across Defendant's branches. *See supra* at 10-15.

**(3) *Improper Wage Statements.*** Defendants failed to provide Plaintiffs and Class members with proper wage statements because the number of hours recorded on the wage statements undercounted the number of hours Plaintiffs and Class members had actually worked, and not all information required by law was present. Given the documents produced and the nature of these systemic practices of undercounting, this claim is common to and typical of the Class. *See supra* 17-19.

In sum, because all Plaintiffs' claims are common to and typical of the claims of Class members, and because these claims can be resolved with generalized answer and proof revolving around the legality of Defendant's companywide wage policies, the commonality and typicality requirements are met.

### v.    *Plaintiffs Will Adequately Represent the Class*

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where "(1) plaintiff's interests are [not] antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Satisfaction of the typicality requirement

"is strong evidence that [the plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate [the plaintiffs'] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.

In order to defeat class certification, "the conflict [of interests] must be 'fundamental.'" *See Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir. 2001). While the courts have yet to explicitly define a "fundamental" conflict, it was held to exist when "the interests of the class representative can be pursued only at the expense of the interests of all the class members." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp*., 654 F.3d 242, 259 (2d Cir. 2011). Further, it is worth noting that even "in the event a fundamental conflict does exist, it can be ameliorated by separating the class into 'homogeneous subclasses . . . with separate representation to eliminate conflicting interests.'" *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *31 (quoting *Literary Works*, 654 F.3d at 259).

Here, Plaintiff NI as well as other Opt-in Plaintiffs have stated a willingness, and demonstrated an ability, to adequately represent the Class. *See* Ratogi Decl. at ¶ 18-19; *see also,* Second Brown Decl. ¶ 1-2. *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 130 (S.D.N.Y. 2012) ("Courts in this [C]ircuit have found that plaintiffs' affidavits can properly satisfy evidence adequacy."); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc*., 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding adequacy, relying in part on plaintiff's affidavit). As presented above, Plaintiffs were subject to the same policies and practices as the Class, and has no interests that are antagonistic to those of the Class. *See Id.* The same legal arguments and strategies will be used to vindicate their claims and those of the Class.

      *vi.*    <u>*Common Questions of Law and Fact Predominate*</u>

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . [that a] class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have met the various criteria under Rule 23(a), and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *22 (S.D.N.Y. 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a)].").

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individual proof." *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557, at *24 (S.D.N.Y. Aug. 12, 2008). *See Rosario v. Valentine Ave. Disc. Store, Co*., 2013 U.S. Dist. LEXIS 77183, at *31 (E.D.N.Y. May 31, 2013) (the predominance requirement is a "stricter version of the Rule 23(a) commonality requirement").

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer, alleging unlawful policies and practices. *See, e.g*., *Rosario*, 2013 U.S. Dist. LEXIS 77183, at* 32; *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Garcia*, 281 F.R.D. at 108; *Damassia*, 250 F.R.D. at**Error! Bookmark not defined.** 161; *Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821, at

*24 (E.D.N.Y. Mar. 2, 2008); *Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178, 184 (S.D.N.Y. 2007); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004). In fact, "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Poplawski v. Metroplex on the Atl., LLC*, 2012 U.S. Dist. LEXIS 46408, at *27 (E.D.N.Y. Apr. 2, 2012).

Here, Plaintiffs have alleged that Defendant engaged in a common policy of (1) failing to accurately track and compensate employees for their actual work hours; (2) failing to pay wages for breaks of 20-minutes or less; and (3) failing to provide proper notice of hours and wages to New York and California Class Members. "These types of claims are about the most perfect questions for class treatment." *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *39 (citing *Iglesias-Mendoza*, 239 F.R.D. at 373). **To the extent that Plaintiffs and Class Members "have different damages, depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance."** *Id.* (emphasis added) *See Gonzalez v. Nicholas Zito Racing Stable, Inc.*, 2008 U.S. Dist. LEXIS 27598, at *22 (E.D.N.Y. Mar. 31, 2008) ("factual variation among the circumstances of the class members is inevitable and does not defeat the predominance requirement.").

In sum, common questions regarding the legality of Defendant's compensation policies and practices predominate over any individual inquiries that may arise. Accordingly, Plaintiffs have satisfied the predominance requirement under Rule 23(b)(3).

### vii.   *Class Treatment Is Superior to Other Alternatives*

"Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and

burden of individual litigation, and many potential class members are currently employed by [the] Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Not only would a class action in the instant case allow for a "more cost-efficient and fair litigation of common disputes" than individual actions, but "it is likely the only device by which many of the proposed class members would obtain relief." *Garcia*, 281 F.R.D. at 108; *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *42. *See Iglesias-Mendoza*, 239 F.R.D. at**Error! Bookmark not defined.** 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"); *Perez v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 130214, at *67 (E.D.N.Y. Sep. 16, 2014) ("In the instant case, the NYLL Class consists of hundreds of potential class members, most of whom are likely to have suffered a small economic loss if they prevailed on individual claims arising from the dispute that is the subject of this lawsuit. Therefore, few individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail, particularly when many of the putative plaintiffs have suffered economic loss of de minimis value.").

Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### viii.    *Plaintiffs' Counsel Should Be Appointed as Class Counsel*

Rule 23(g) requires that an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." Plaintiffs' counsel has been approved as class counsel in over 100 hundred class actions and is amply serving the interest of the Class. *See* Declaration of C.K. Lee in Support of Plaintiffs' Motion to Certify Class. *See also* **Exhibit O**, Lee Litigation Group, PLLC Class Case List.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs have satisfied all of the requirements under Fed. R. Civ. P. 23. Therefore, Plaintiffs respectfully requests that their motion for class certification be granted in its entirety, including Court-approval of the Proposed Notice attached to this Memorandum as **Exhibit A**.


Dated: New York, New York                        Respectfully submitted,

      August 12, 2024

                                       By:    */s/ C.K. Lee*
                                              C.K. Lee, Esq.

                                            **LEE LITIGATION GROUP, PLLC**
                                            C.K. Lee (CL 4086)
                                            148 West 24th Street, 8th Floor
                                            New York, NY 10011
                                            Tel: (212) 465-1188
                                            Fax: (212) 465-1181
                                            *Attorneys for Plaintiffs,*
                                            *FLSA Collective Plaintiffs, and the Class*